# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

First Philadelphia Preparatory Charter
School, Tacony Academy Charter School,
Memphis Street Academy Charter School
at J.P. Jones, Lindley Academy Charter
School at Birney, f/k/a General David B.
Birney Charter School, A String Theory
Charter School, f/k/a Philadelphia
Performing Arts Charter School,
Philadelphia Charter School for Arts and
Sciences at H.R. Edmunds, Architecture
and Design Charter High School d/b/a
Charter High School for Architecture and
Design,

       Petitioners

     v.

Commonwealth of Pennsylvania,
Department of Education, Pedro Rivera
Secretary of Education of the
Commonwealth of  Pennsylvania, School
District of Philadelphia, William Hite,
Superintendent of the School District of
Philadelphia, Tom Wolf, Governor of the
Commonwealth of Pennsylvania, Josh
Shapiro, Attorney General of the
Commonwealth of Pennsylvania, Joseph
Scarnati, III, President Pro Tempore of the
Senate of Commonwealth of
Pennsylvania, Jay Costa, Minority Leader
of the Senate of the Commonwealth of
Pennsylvania, Mike Turzai, Speaker of the
House of Representatives of the
Commonwealth of Pennsylvania and
Frank Durmody, Minority Leader of the
House of Representatives of the
Commonwealth of Pennsylvania,

       Respondents

159 M.D. 2017
Argued:  October 19, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED**: **February 22, 2018**

## Background

Petitioners are a group of brick-and-mortar charter schools located in Philadelphia that are challenging the charter school per-pupil subsidy rates for the 2016-17 school year established by the School District of Philadelphia (District). Respondents include the Department of Education (PDE), Secretary of Education Pedro Rivera, Governor Tom Wolf (collectively, Executive Respondents), the District and District Superintendent Dr. William Hite (District Respondents), Attorney General Josh Shapiro, and the majority and minority leaders of both houses of the General Assembly (Legislative Respondents). The focus of Petitioners' litigation is Section 1725-A of the Charter School Law (CSL),[1] which requires that a school district that has any resident student enrolled in a charter school pay the charter school for each enrolled student. Section 1725-A(a)(2), (3), (5), and (6) of the CSL, which we reference throughout this opinion, provides:

> (2) For non-special education students, the charter school shall receive for each student enrolled *no less than the budgeted total expenditure per average daily membership for the prior school year*, as defined in section 2501(20) [of the CSL], *minus the budgeted expenditures of the district of residence* for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses,

[1] Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17-1725-A.

2

including debit service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the department. This amount shall be paid by the district of residence of each student.

(3) For special education students, the charter school shall receive for each student enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of section 2509.5(k) [of the CSL] times the district of residence's total average daily membership for the prior school year. This amount shall be paid by the district of residence of each student.

. . . .

(5) *Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year.* A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding pursuant to Article XXV. If a school district fails to make a payment to a charter school as prescribed in this clause, the secretary shall deduct the estimated amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school. No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the school district for the previous school year. If a school district fails to make payment to the charter school, the secretary shall deduct and pay the amount as documented by the charter school from any and all State payments made to the district after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

(6) Within thirty (30) days after the secretary makes the deduction described in clause (5), a school district may notify the secretary that the deduction made from State payments to the district under this subsection is inaccurate. The secretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

24 P.S. § 17-1725-A(a)(2), (3), (5), and (6) (emphasis added).

In their six-count petition for review, Petitioners maintain that they are entitled to declaratory, mandamus, and injunctive relief.[2] Counts 1 and 2 are in the nature of declaratory relief and do not purport to be against any specific respondents. In Count 1, Petitioners seek declaratory relief to recognize as void or invalid PDE's July 2012 "Guidelines for Form Completion PDE-363, Funding for Charter Schools" (Guidelines), which PDE developed for the stated purpose of

---

[2] Section 7541 of the Declaratory Judgments Act provides that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. § 7541. Appropriate only where there is an actual controversy, such controversy "exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth. 2010). "Granting or denying a petition for declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

An extraordinary remedy, a writ of mandamus is "used to compel official performance of a ministerial act when a petitioner establishes a clear legal right, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014). Its purpose is to enforce rights that have been clearly established. *Id*.

As for permanent injunctive relief, the following criteria must be established: (1) the right to relief is clear; (2) the relief is necessary to prevent an injury which cannot be compensated by damages; and (3) greater injury will occur from refusing the injunction than from granting it. *Mazin v. Bureau of Prof'l & Occupational Affairs*, 950 A.2d 382, 389 (Pa. Cmwlth. 2008).

4

implementing Section 1725-A(a) and directed each school district to abide by the procedures specified therein. *See* Addendum to Opinion. They aver that the Guidelines create a binding norm and, therefore, amount to regulations which were not lawfully promulgated. Alternatively, they aver that the Guidelines improperly instruct school districts to implement in mid-year recalculated and revised rates based upon the district's *actual* expenditures for the prior school year in violation of Section 1725-A(a), which provides that charter schools shall be funded by districts in twelve *equal* monthly payments, as determined in reference to the district's *budgeted* expenditures for the prior school year. In Count 2, Petitioners request a declaration that Section 1725-A(a) prohibits the process described in the Guidelines.[3]

In Counts 3 through 6, Petitioners seek relief against the District. Count 3 is a request for injunction and seeks a prohibition against adjustment and retroactive recovery of per-pupil subsidies. Specifically, Petitioners request that this Court enjoin the District from hereafter reducing charter school per-pupil funding rates by recalculating those rates based upon actual expenditures for the prior school year, and compel the District to restore 2016-17 rates to the amounts as they existed prior to the PDE-mandated calculation of revised rates. Count 4 is in the nature of mandamus and asserts that the District has a mandatory duty to calculate subsidies in accordance with the statutory formula, irrespective of the PDE's invalid Guidelines. This count requests that we direct the District to make immediate payment to Petitioners of 2016-17 subsidy payment amounts withheld due to the recalculation of rates based upon actual expenditures. Count 5 is in the nature of a mandatory injunction and requests that this Court enter judgment in Petitioners'

---

[3] Petitioners assert that the PDE mandated process, if not enjoined, will deprive Philadelphia charter schools of more than twenty million dollars in 2016-17 subsidy funding to which they are statutorily entitled.

favor and direct the District to make immediate payment to them of any and all amounts owed for the 2016-17 school year. In Count 6, Petitioners assert a procedural due process violation under Section 1983 of the United States Code, 42 U.S.C. § 1983, averring that the District has implemented a process which deprives them of their protected property interests in per-pupil funds without providing them with prior notice and an opportunity to be heard. Petitioners seek reimbursement from the District of all amounts withheld as a result of the PDE mandated recalculations for the current and all prior school years, as well as court costs and counsel fees.

Following a July 2017 hearing, Petitioners' motion to preliminarily enjoin the District from reducing future payments in accordance with the Guidelines was granted until further order of this Court.[4] The Court observed that all school districts had followed the statutory mandate set forth in the CSL until about 2012, when PDE changed its Guidelines to the ones at issue. It further noted that the District neither disputed that the Guidelines were patently inconsistent with the CSL nor even attempted to reconcile that discrepancy as a matter of law. In concluding that Petitioners established a clear right to relief, the Court determined:

> Evidence was presented that the Guidelines were implemented to prevent school districts from devising artificially low budgets, depriving their charter schools of subsidies to which they should have been entitled. Apparently some districts, not Philadelphia, had engaged in such practices in the past. Clearly, basing the subsidies on actual school district spending in the prior year is a fair and appropriate vehicle to insure that all charter schools throughout the state receive their fair share of funding. Nonetheless, however salutary the Department's policy, it is beyond the authority of the Department to mandate

---

[4] It was further ordered that Petitioners file a $5000 bond on or before July 31, 2017, and Petitioners did so.

6

subsidy calculations inconsistent with the statutory formula. To ameliorate the problems perceived by the Department is the sole prerogative of the General Assembly.

(July 19, 2017, Leadbetter, S.J., Memorandum Opinion (Op.) at 8.)

In addition, even though Petitioners had an existing statutory remedy in Section 1725-A(a)(5) and (6) of the CSL by which they could seek to recoup the District's underpayment of subsidies and at least one of the Petitioners had pending appeals before PDE, the Court agreed that the process was slow and inefficient thereby rendering it inadequate. (*Id*. at 6.) Further, observing that violation of an express provision of a statute is *per se* irreparable injury,[5] the Court nonetheless determined that Petitioners showed the requisite harm.[6] Finally, it concluded that the District produced neither evidence of harm if the injunction were granted nor any negative impact on the public. *See Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 78 (Pa. Cmwlth. 2010) (holding that, "as between the school district and the charter school, the legislature has decided that more harm will befall a charter school that is not paid . . . accurately than upon a school district that may experience delay in the receipt of the state subsidy to which it is entitled.").

Now before us for disposition are four sets of preliminary objections from the respective respondents, as well as the application to strike Petitioners' answer to preliminary objections filed by Executive Respondents and the application for sanctions filed by Legislative Respondents. We turn first to the objections of

---

[5] *Wyland v. West Shore Sch. Dist*., 52 A.3d 572, 583 (Pa. Cmwlth. 2012).

[6] The Court credited the testimony of Mr. Gerald Santilli, who "testified that a mid-year reduction in funding that was budgeted at the beginning of the school year can cause a school district to face the Hobson's choice of laying off needed staff or making other spending cuts that harm the educational quality of programs, or of dipping into their surplus or equity, endangering their bond rating and, in some situations, their ability to continue as a viable entity." (July 19, 2017, Memorandum Op. at 9.)

7

those parties that claim to have been improperly joined (Attorney General, Governor, Secretary, Superintendent, and Legislative Respondents), which will enable us to focus on the remaining matters that are ripe for review.[7]

**Whether any Claim is Stated Against the Attorney General, Governor, Secretary, Superintendent and Legislative Respondents**

In Count 1, Petitioners aver that PDE, the Secretary, and the Attorney General are "charged with representing the general public and those charter schools and school districts which have an interest in the validity of the [Guidelines] and the proper construction of Section 1725-A(a) funding formula." (April 18, 2017, Petition for Review, ¶ 88.) They assert that joining every school district and charter school in the Commonwealth that have those interests "would frustrate the remedial and liberal intent of the Declaratory Judgments Act[.]" (*Id.*) In Count 2, Petitioners aver that "[t]he Governor, the presiding officers of the General Assembly, PDE, the Secretary and the Attorney General adequately represent the interests of all individuals who would potentially be impacted by the declaration sought." (*Id.*, ¶ 95.) By making those assertions, Petitioners seem to be explaining their decision to include all of these parties without significant elucidation. No further allegation regarding the Governor, the Attorney General, or the Legislative Respondents is stated, let alone any claim that these parties have failed to fulfill the duties ascribed to them, that they play any role in the processes at issue here or that they have taken any action whatsoever with respect to the funding of charter schools.[8]

_____

[7] In July 2017, the Court granted the motion to dismiss or quash appeal filed by Executive Respondents to the extent that Petitioners sought to invoke our appellate jurisdiction, observing that their petition did not identify any governmental agency determination for which review was sought.

[8] As for the Legislative Respondents, which PDE acknowledges, issues concerning the enforcement of the CSL are vested exclusively in the executive branch of government and not with

Turning next to the Superintendent, we observe that Petitioners' only reference to him is in paragraph 128(c) of the petition for review, which must be read in conjunction with the remaining provisions of that paragraph:

> 128. The threatened and ongoing deprivation by the . . . District to Petitioners . . . of per pupil funds to which they are entitled constitutes official action of the . . . District, though such official action has not been formally approved into policy by resolution of the governing School Reform Commission, because it constitutes the policy, custom, or practice of the . . . District, as demonstrated by:
>
> (a) The . . . District's annual practice since approximately 2012 of implementing the per pupil rate recalculation and reconciliation process;
>
> (b) Official correspondences from Uri Monson, Chief Financial Officer of . . . [the] District, to all Philadelphia charter schools . . . alerting them to the per pupil rate calculation and reconciliation process; and
>
> (c) Upon information or belief, the actual or constructive knowledge and approval or acquiescence of the . . . District's governing School Reform Commission, the *Superintendent*, and other key leadership personnel.

(April 18, 2017, Petition for Review, ¶ 128(a)-(c) (emphasis added)).

We conclude that the allegations against the Governor, the Attorney General, the Superintendent and the Legislative Respondents are insufficient as a matter of law to support Petitioners' cause of action. Contrary to Petitioners' assertions, these parties are not indispensable simply by virtue of "representing the general public," some segment of which may have an interest in this matter. *See 1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 116 (3d Cir. 1993) (holding that, "[i]f we were to allow [joinder of] Commonwealth Officials in this lawsuit based on

the legislative branch. The crux of this case is that PDE's Guidelines are invalid because they conflict with the very statute enacted by the Legislative Respondents.

9

their general obligation to enforce the laws of the Commonwealth, we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it."). Therefore, the demurrers of the Governor, the Attorney General, the Superintendent and the Legislative Respondents are sustained.[9]

Turning finally to the Secretary, Executive Respondents assert that it is PDE, rather than the individual executive respondents, that is charged with the regulation and administration of the CSL and with enforcing and defending the disputed statutory provisions. As PDE states: "Because it is PDE's responsibility to enforce the statute, and because the PDE-363 Guidelines challenged here were issued by PDE, not the Governor or Secretary, any relief sought by [Petitioners] in Counts 1 and 2 can be ordered against PDE . . . ." (Executive Respondents' Brief at 15-16.) Dismissing the Secretary, however, is problematic.

In Section 1725-A(a)(5) and (6) of the CSL, the legislature unambiguously identified the Secretary as the party legislatively prescribed to perform certain functions. For example, Section 1725-A(a)(6) provides, in pertinent part, that within thirty days after the Secretary makes the deduction described in clause (5), a district may notify him of the inaccuracy of the deduction. The Secretary is required to provide the district with an opportunity to be heard regarding whether the amounts deducted from the school district were accurate. Although PDE's preliminary objections assert that these responsibilities are to be carried out by the Department rather than its Secretary, given the statutory framework and the

---

[9] To the extent these parties have raised other preliminary objections, we need not address them.

10

issues at hand, we believe both PDE and the Secretary are proper parties. Accordingly, this preliminary objection of the Secretary is denied.

## Remaining Preliminary Objections

## Statutory Remedy

The primary argument raised by the remaining Respondents, *i.e.*, PDE, its Secretary and the District, is that Petitioners have an available statutory remedy and, therefore, that this Court lacks jurisdiction to entertain this declaratory judgment action. However, for this argument to prevail, the statutory remedy must be adequate. While the CSL does indeed provide a remedy for charter schools which believe they have been underfunded, this preliminary objection fails for several reasons.

Following extensive presentation of evidence at the preliminary injunction hearing, this Court noted:

> Petitioners produced evidence that the Charter High School for Architecture and Design has a pending challenge to the District's *2015-16* rate reduction before the Department. This challenge was initiated last winter and, as yet, no hearing has been set by the Department. If and when the Department issues a final decision further appeal could be taken to this Court. Petitioners assert in their brief that the Auditor General has described the process as slow and inefficient, and the Court is in agreement with this characterization. In addition to the burdensome nature of the process, they contend that, even if the charter schools can subsequently recover the funds: (1) tangible harm will occur in the interim in that people will lose jobs; (2) the lives of thousands of students will be directly affected; and (3) unless the process is enjoined, it will keep being repeated each year, depriving the Charter Schools of funding upon which they rely. Based on the testimony concerning the slow nature of the process and the testimony described below concerning the

11

> potential for irreparable harm in the interim, I agree that
> the statutory remedy is not adequate.

(July 19, 2017, Memorandum Op. at 6-7.)

While Respondents could attempt anew to rebut this evidence in the context of a final hearing, adequacy remains a factual question and that alone would require this preliminary objection to be overruled. Even more fundamentally, the statutory procedure would be carried out by the Secretary and PDE, the entities responsible for promulgating and mandating adherence to the Guidelines here challenged. To suggest that in carrying out the statutory process for determining the adequacy of the District's funding PDE and/or the Secretary would utilize anything other than their own Guidelines is unrealistic in the extreme. While there could eventually be an appeal to this Court, the layers of delay before the issue could be objectively adjudicated make the statutory process wholly inadequate.

Finally, we observe that the adequacy of the statutory remedy is intertwined with the legality of the Guidelines. It is essentially undisputed, and quite obvious, that the Guidelines are in derogation of the plain language of the CSL, and thus are "*per se* invalid," similar to the well permitting process at issue in *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118 (Pa. Cmwlth. 2015), *aff'd*, 161 A.3d 949 (Pa. 2017) ("*PIOGA*").

In *PIOGA*, we considered the preliminary objections of the Department of Environmental Protection (DEP) to PIOGA's petition seeking a declaration prohibiting DEP from applying and enforcing the requirements of Section 3215(c) of the Act commonly known as the Pennsylvania Oil and Gas Act[10] on well permit applicants based on the Supreme Court's decision in *Robinson Township v.*

---

[10] 58 Pa. C.S. § 3215(c).

*Commonwealth*, 83 A.3d 901 (Pa. 2013) (plurality). In *Robinson*, the Supreme Court enjoined the application and enforcement of that provision as unconstitutional. We held that PIOGA's members were not required to pursue piecemeal litigation in order to obtain a judicial determination, applying two exceptions to the doctrine requiring a party to exhaust all adequate and available administrative remedies before the right to judicial review arises: (1) the so-called *Arsenal Coal* exception,[11] providing that, "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of the enforcement[;]"and (2) the inadequacy of the available statutory remedy exception.

> Applying the *Arsenal Coal* exception, we reasoned as follows:
>
> PIOGA is challenging DEP's ability to apply those requirements on *any of its members* and is, essentially, an industry-wide challenge to DEP's permitting process, which is analogous to the challenge raised in *Arsenal Coal [Company v. Department of Environmental Resources*, 477 A.2d 1333, 1339 (Pa. 1984)]. It is apparent that a conflict between DEP and PIOGA's members concerning the validity of DEP's permitting process as applied to *all applicants* is "unavoidable [and] the ripening seeds of a controversy appear."

*PIOGA*, 135 A.3d at 1128 (emphasis in original) (citation omitted).[12]

In determining that PIOGA was not precluded from challenging DEP's permitting process under the Declaratory Judgments Act, we were mindful of the following: "Declaratory judgment actions were designed, in part, to eliminate the

---

[11] A*rsenal Coal Co. v. Dep't of Envtl. Res.*, 477 A.2d 1333, 1339 (Pa. 1984).

[12] Although Petitioners in the present case characterized their litigation as a class action, they did not pursue that avenue. Nonetheless, we observe that the resolution of the instant declaratory judgment action will resolve matters for the remaining school districts in the Commonwealth in that PDE ultimately will be forced to change its guidelines or promulgate regulations to conform with the applicable provisions of the CSL.

substantial expense and uncertainty that results from the type of piecemeal litigation that DEP suggests will resolve an issue that will affect this entire industry. *Id.* We concluded, therefore, that PIOGA was not required to exhaust its members' administrative remedies before seeking judicial review via a declaratory judgment action and that its claims were justiciable. In so determining, we noted that only courts have the power to grant declaratory judgment and injunctive relief pursuant to the Declaratory Judgments Act and, therefore, the Environmental Hearing Board's inability, *inter alia*, to award this relief could render the available statutory remedy inadequate. *Id.* at 1129-30 [citing *Empire Sanitary Landfill, Inc. v. Dep't of Envtl. Res.*, 684 A.2d 1047 1054 (Pa. 1996)].

In the present case, we conclude that PDE exceeded its authority in developing and applying Guidelines, for the stated purpose of implementing Section 1725-A(a) of the CSL, that are in flagrant derogation of that statutory provision and further by instructing every school district in the Commonwealth to adhere to those Guidelines. PDE's institution and application of guidelines that are patently inconsistent with the CSL is analogous to DEP's well permitting process in *PIOGA*. Similarly, we decline to require charter schools from all over the Commonwealth to engage in inefficient piecemeal litigation in order to obtain a judicial determination reviewing guidelines that are *per se* invalid. Accordingly, the preliminary objections pertaining to failure to exhaust administrative remedies are hereby overruled.[13]

**Demurrers**

We note that a demurrer contests the legal sufficiency of a complaint. *Christ the King Manor v. Dep't of Pub. Welfare*, 911 A.2d 624, 633 (Pa. Cmwlth.

---

[13] While we conclude that the Guidelines are *per se* invalid, we note that any award of relief on that basis would be premature, as the only dispositive motions now before us are the Respondents' preliminary objections.

14

2006), *aff'd*, 951 A.2d 255 (Pa. 2008). Courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts. *Id*. However, courts are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion. *Id*. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Any doubt must be resolved in favor of the non-moving party. *Id*.

The Secretary and PDE demur to Petitioners' charge that the Guidelines amount to an invalidly promulgated regulation. This preliminary objection, if not moot as a result of our conclusion that the Guidelines are substantively invalid, implicates fact-finding as to both their promulgation and implementation. Therefore, it must be overruled.

The Secretary and PDE further object on the ground that the claim for declaratory relief seeks an advisory opinion. We disagree. Accepting Petitioners' allegations as true, not to mention the evidence presented at the preliminary injunction hearing (*see supra* at 7, n.6 and 12), it is plain that there is a genuine controversy in which Petitioners have a direct substantial and immediate interest. This preliminary objection must also be overruled.

The District next objects to Counts 3 and 5 seeking injunctive relief. It argues that PDE is the sole arbiter of the adequacy of the District's funding of its charter schools, and that since no court has yet found the Guidelines to be invalid, the District is complying with the law in implementing the mandate of PDE. They also aver that the Petitioners agreed to abide by the Guidelines because they signed charter agreements stating that they "shall comply" with all common and statutory law and "regulations and guidance as in effect from time to time." (District Respondents' Preliminary Objections at 10.) Thus it argues that Petitioners cannot maintain a cause of action against the District or the Superintendent. This begs the

15

question at issue here. Even assuming that the District acted properly in following the mandates of the PDE, that does not mean that it cannot be enjoined from implementing the Guidelines if they are found to be inconsistent with the statutory mandate. Moreover, it is utterly disingenuous to suggest that Petitioners have waived the right to challenge the validity of the Guidelines because they signed a general provision in their charter contracts agreeing to comply with the law. This preliminary objection is overruled.

The District also demurs to the Petitioners' claim for mandamus relief, arguing that mandamus will not lie because Petitioners are not asking the Court to order it to perform a ministerial act and that there is a statutory remedy precluding mandamus relief. As to the latter argument, we note simply that we have already dealt with the statutory remedy issue. With respect to the principle cited by the District that "mandamus is not available to establish legal rights" (Brief of the District at 23), we cannot disagree with this as a general statement of the law. Nonetheless, as our Supreme Court noted in *Seeton v. Pennsylvania Game Commission*, 937 A.2d 1028 (Pa. 2007):

> [A]ssuming [the Petitioner] prevails in establishing that the Commission's interpretation of its own regulations is inconsistent with that body's statutory mandate, mandamus is an appropriate remedy. . . . The Commission does not have the power to redefine its authority at will; the courts are an appropriate destination, and mandamus an appropriate remedy, to direct the Commission to comply with its statutory mandate to the extent it misapprehends it.

*Id*. at 1034 (citation omitted). The issue at hand presents an even clearer case than *Seeton*, which dealt with interpretation of the statutory term "wild mammals," whereas here the statutory language is clear beyond peradventure. Accordingly, this objection is overruled as well.

16

We turn now to the District's preliminary objections to Petitioners' cause of action under 42 U.S.C. § 1983. Petitioners assert a procedural due process violation under Section 1983, averring that the District implemented a process that deprived them of their protected property interests in per-pupil funds without providing them with prior notice and an opportunity to be heard. For the reasons that follow, we conclude that Petitioners are precluded from making such claims against the District.

This Court has held that the relationship between charter schools and public schools is "closely intertwined." *Warner v. Lawrence*, 900 A.2d 980, 988 (Pa. Cmwlth. 2006). Indeed, Section 1703-A of the CSL defines a charter school as an independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend. 24 Pa. C.S. § 17-1703-A. The local school board exercises substantial control over the charter school's existence in that, in order to establish a charter school, an application for approval must be submitted to the local board of school directors of the public school district where the charter school will be located. Section 1714-A(a)(c) of the CSL, 24 Pa. C.S. § 17-1714(a)(c).

Regarding the control that a school district exercises over a charter school, federal case law provides that the relationship between charter schools and their local school districts "is analogous to that of a municipal corporation-creator where the powers granted to the municipal corporation are defined and limited by the creator." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 612 (M.D. Pa. 2012). This is consistent with Section 1714-A(a)(2) of the CSL, which provides that a charter school can "[s]ue or be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued." 24 Pa.C.S. § 17-1714(a)(2). Significantly, federal courts

have held that, like a municipality, a charter school may not bring a constitutional challenge against its creator. *Pocono Mountain Charter Sch.*, 908 F. Supp. 2d at 612. To that end, the United States District Court for the Eastern District of Pennsylvania recently dismissed a charter school's Section 1983 claims with prejudice, concluding that the charter school was sufficiently analogous to a municipal corporation that it was precluded from asserting any constitutional claims against the school district. *I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, 2017 U.S. Dist. LEXIS 94491 (E.D. Pa., Civil Action No. 16-2833, filed June 20, 2017) [citing *Pocono Mountain Charter Sch.*, 908 F. Supp. 2d at 612 and *Reach Acad. for Boys and Girls, Inc. v. Delaware Dep't of Educ.*, 8 F. Supp. 3d 574, 578 (D. Del. 2014)]. We find this case law to be persuasive, especially in light of the fact that this cause of action is grounded in federal statutory law. Therefore, we agree that charter schools cannot assert Section 1983 claims against their school districts, and sustain this preliminary objection.[14]

### Legislative Respondents' Application for Sanctions

In their application, Legislative Respondents state that Petitioners averred no specific facts related to them, asserted no viable legal claims against them, and sought no specific legal relief of any kind from them. Further, these respondents allege that they incurred significant attorney's fees and costs to research, draft, and prepare preliminary objections in a matter where Petitioners refused to dismiss them voluntarily as a party absent some type of amorphous agreement of all parties to the action that all indispensable parties had been named. Accordingly,

---

[14] In light of this determination, we need not address the District's further challenges to the Section 1983 count based on its claim of immunity and its claim that Petitioners lack standing because they are not "persons" within the meaning of Section 1983.

claiming that Petitioners violated Pa. R.C.P. No. 1023.1(c), they maintain that sanctions are warranted.

Rule 1023.1(c)(1) – (3) addresses the failure to proffer, in good faith, a signed document/pleading and provides:

> (c) The signature of an attorney . . . constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney . . . certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation,
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law, [and]
>
> (3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

We conclude that Legislative Respondents' application for sanctions has merit, especially in light of Petitioners' steadfast refusal to dismiss them when it became increasingly clear that they were not indispensable, or even appropriate, parties.  In so determining, we observe that they, through outside counsel, were required to respond to Petitioners' emergency application for preliminary injunction as well as to file preliminary objections and participate in the briefing and oral argument before this Court that followed.  Accordingly, we grant their application.

19

## Conclusion

For the reasons set forth above, we enter the attached order.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# Addendum

Received 4/18/2017 2:11:32 PM Commonwealth Court of Pennsylvania

## Guidelines for Form Completion
Filed 4/18/2017 2:11:00 PM Commonwealth Court
## PDE-363, Funding for Charter Schools
159 MD 2017

The following guidelines have been developed by the Pennsylvania Department of Education (Department) to accurately implement the provisions of Section 1725-A(a) of the Charter School Law, 24 P.S. § 17-1725-A(a).

The current form PDE-363 Excel template can be found online at: www.education.state.pa.us. Select Data and Statistics; Finances; Financial Documents.

The Excel file containing calculated selected expenditure per average daily membership (ADM) rates for nonspecial and special education can be found online at: www.education.state.pa.us. Select Programs; Programs A-C; Charter Schools; Charter School Funding.

\* \* \* \* \* \* \* \* \* \*

The following procedures shall apply to each school district:

A. Each school district shall complete a PDE-363 each year using the official Excel calculation template found on the Department's website. The form shall be completed with the most currently available expenditure data.

B. A completed PDE-363 shall be filed with the Department no later than July 31 of the fiscal year for which the form is being completed. For the 2012-13 fiscal year, PDE-363 shall be filed no later than August 8, 2012.

C. As provided for on the Excel template, a school district may include the federal portion of expenditure sub-functions in the "Deductions from Total Expenditures" section of the PDE-363. However, expenditures using the federal portion of Basic Education Funding (ARRA-SFSF or EdJobs) may *not* be included as federal expenditures.

D. Following the submission date in B above, the Department will post an Excel file on its website containing each school district's selected expenditure per ADM rates for nonspecial and special education based on the accepted PDE-363 submitted to the Department. If a school district fails to submit a PDE-363 by the deadline, the Department will post the rates from the previous school year. After rates are posted, changes to the PDE-363 will not be permitted except as provided in E and F below.

E. In January, the Department will calculate each school district's selected expenditure per ADM rates for nonspecial and special education using preliminary data reported on each school district's Annual Financial Report (AFR) and preliminary ADM. An updated Excel file containing these rates will be posted on the Department's website.

F. In May, the Department will calculate each school district's selected expenditure per ADM rates for nonspecial and special education using final, approved data reported on a school district's AFR and final ADM. A final Excel file containing these rates will be posted on the Department's website.

G. Charter schools shall utilize the rates listed on the most current Excel file posted on the Department's website.

H. Questions about these guidelines or the PDE-363 should be directed to ra-CSFunding@pa.gov.

July 2012

EXHIBIT A:
PDE-363 GUIDELINES

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

First Philadelphia Preparatory Charter
School, Tacony Academy Charter School,
Memphis Street Academy Charter School
at J.P. Jones, Lindley Academy Charter
School at Birney, f/k/a General David B.
Birney Charter School, A String Theory
Charter School, f/k/a Philadelphia
Performing Arts Charter School,
Philadelphia Charter School for Arts and
Sciences at H.R. Edmunds, Architecture
and Design Charter High School d/b/a
Charter High School for Architecture and
Design,

                  Petitioners

               v.                   159 M.D. 2017

Commonwealth of Pennsylvania,
Department of Education, Pedro Rivera
Secretary of Education of the
Commonwealth of Pennsylvania, School
District of Philadelphia, William Hite,
Superintendent of the School District of
Philadelphia, Tom Wolf, Governor of the
Commonwealth of Pennsylvania, Josh
Shapiro, Attorney General of the
Commonwealth of Pennsylvania, Joseph
Scarnati, III, President Pro Tempore of the
Senate of Commonwealth of
Pennsylvania, Jay Costa, Minority Leader
of the Senate of the Commonwealth of
Pennsylvania, Mike Turzai, Speaker of the
House of Representatives of the
Commonwealth of Pennsylvania and
Frank Durmody, Minority Leader of the
House of Representatives of the
Commonwealth of Pennsylvania,

                  Respondents

# **O R D E R**

AND NOW, this 22nd day of February, 2018, the preliminary objections of Governor Wolf, Attorney General Shapiro, Superintendent Hite and the Legislative Respondents are SUSTAINED and the above-captioned Petition for Review is DISMISSED as to them.  The objection of Secretary Rivera that no claim has been stated against him is OVERRULED.

The preliminary objections of the Secretary, the Department of Education and the Philadelphia School District based on the availability of an administrative remedy and pendency of such a proceeding are OVERRULED.  The preliminary objection of the Secretary and the Department to the claim in Count 1 of the Petition for Review that the Guidelines amount to a regulation that was not lawfully promulgated, is OVERRULED.  The demurrer of the Secretary and the Department on the basis that declaratory relief does not lie because Petitioners' interests are not direct, substantial and immediate is OVERRULED.

The District's preliminary objection stating that injunctive relief will not lie because the District and Petitioners were lawfully required to follow the Guidelines is OVERRULED.  The District's preliminary objection that mandamus relief will not lie is OVERRULED.  The District's preliminary objection to the cause of action arising under 42 U.S.C. § 1983 is SUSTAINED and accordingly, Count 6 of the Petition for Review is DISMISSED.

Further, we GRANT Legislative Respondents' application for sanctions and order them to file a detailed statement of costs and attorney's fees with this Court within fourteen (14) days.  Executive Respondents' application to strike Petitioners' answer to preliminary objections is DISMISSED as moot.

Remaining Respondents shall file an answer to the Petition for Review within thirty (30) days from the date of this Order.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge