# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonia Pantoja Charter School, :
Esperanza Academy Charter High :
School, Eugenio Maria de Hostos :
Charter School, John B. Stetson :
Charter School, Olney Charter High :
School, Aspira Bilingual Cyber :
Charter School, Esperanza Cyber :
Charter School, Pennsylvania Cyber :
Charter School, :
                  Petitioners :
                       :
               v. : No. 289 M.D. 2017
                       : Argued: June 6, 2019
Commonwealth of Pennsylvania, :
Department of Education, :
The Secretary of Education, Pedro A. :
Rivera (In His Official Capacity); :
Philadelphia City School District, and :
School Reform Commission, :
              Respondents :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                   **HONORABLE MICHAEL H. WOJCIK,** Judge (P.)
                   **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: August 5, 2019**

Before this Court in its original jurisdiction are three Applications for Summary Relief arising out of a Second Amended Petition for Review (Petition)

filed by five brick-and-mortar charter schools and three cyber charter schools[1] (collectively, Charter Schools). Charter Schools filed the Petition seeking declaratory judgments, writs of mandamus, and injunctive relief against the Commonwealth of Pennsylvania, Department of Education (PDE), and The Secretary of Education, Pedro A. Rivera (In His Official Capacity) (Secretary) (together, Department), and the Philadelphia City School District (SDP) and the School Reform Commission[2] (Commission) (together, District). Charter Schools, Department, and District have each filed an Application for Summary Relief, which are ready for disposition.

## I. Background

Charter Schools allege that District underpaid them for the 2015-2016 school year (SY) because District followed guidance materials (Guidelines) for student reimbursement prepared by PDE, which PDE ultimately rescinded after this Court found they were not in accordance with the Charter School Law[3] (CSL). *First Phila. Preparatory Charter Sch. v. Dep't of Educ.*, 179 A.3d 128, 138 (Pa. Cmwlth. 2018) (*First Philadelphia I*). For this reason, in April 2017, Charter Schools filed "reconciliation requests" and reports with PDE (Petition at 4, ¶ 43, Ex. A), asking PDE to withhold and redirect the underpayments from SDP's state funding pursuant

---

[1] The five brick-and-mortar charter schools are Antonia Pantoja Charter School, Esperanza Academy Charter High School, Eugenio Maria de Hostos Charter School, John B. Stetson Charter School, and Olney Charter High School. The three cyber charter schools are Aspira Bilingual Cyber Charter School, Esperanza Cyber Charter School, and Pennsylvania Cyber Charter School.

[2] The Commission's governance of SDP has ended, and a local Board of Education assumed the Commission's responsibilities on June 30, 2018. *See* Section 696(n) of the School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 6-696(n) (authorizing the Secretary to dissolve the Commission based upon the recommendation of a majority of the Commission).

[3] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, 24 P.S. §§ 17-1701-A—17-1751-A.

to Section 1725-A(a) of the CSL, 24 P.S. § 17-1725-A(a). PDE would not do so, interpreting Section 1725-A(a)(5) as requiring Charter Schools to have submitted documentation setting forth the amount they were underpaid to SDP by October 1, 2016, in order for that provision to apply to the 2015-2016 SY. At issue is the interpretation of the amendment to Section 1725-A(a)(5), which applies after July 2016 (2016 Amendment), and provides that "no later than October 1 . . . a charter school shall submit . . . final documentation" of payment due to a school district. 24 P.S. § 17-1725-A(a)(5). Charter Schools argue it is undisputed SDP underpaid Charter Schools based on the Guidelines, but the case definitively establishing that the Guidelines were impermissible was not decided until **after** October 1, 2016. *First Phila. I*, 179 A.3d at 138. We must determine if Charter Schools had to submit "final documentation" setting forth what they claim remained owing for the 2015-2016 SY with the SDP by October 1, 2016, in order for PDE to withhold funding from SDP and redirect it to Charter Schools for the underpayment. We must also determine whether the October 1 provision affects Charter Schools' request for payment of the underpayment directly from SDP.

### A. *Petition and Answers with New Matter*

Charter Schools allege that PDE prepared improper Guidelines that allowed school districts to pay charter schools less than the amount per student required by Section 1725-A(a)(2) of the CSL[4] (statutory amount). Charter Schools aver SDP

---

[4] Section 1725-A(a)(2) describes the amount school districts must fund charter schools and provides, in relevant part, as follows:

(a) Funding for a charter school shall be provided in the following manner:
. . . .
(2) For non-special education students, **the charter school shall receive for each student enrolled no less than the budgeted total expenditure per average daily**

3

considered the Guidelines mandatory and, using the adjusted per student amount calculated by PDE on its behalf, decreased the amounts it paid to Charter Schools mid-year. According to Charter Schools, SDP underpaid the Charter Schools for the 2015-2016 SY by approximately $1.8 million. Charter Schools allege that SDP represented to them that these Guidelines were mandatory, when Charter Schools assert they were not. When Charter Schools requested in April 2017 that PDE withhold the funds from SDP's state funding necessary to address the underpayment and redirect those amounts to Charter Schools, Charter Schools aver that PDE would not do so in contravention of its mandatory statutory duties. PDE stated Charter Schools failed to submit to SDP "final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the [school district] for the previous school year" by October 1, 2016, which PDE contended is required by Section 1725-A(a)(5) of the CSL. 24 P.S. § 17-1725-A(a)(5). PDE reasoned that, because Charter Schools did not timely provide that final documentation to SDP, Charter Schools had not established their right to the requested immediate relief. PDE advised Charter Schools to proceed through the administrative process to challenge the underpayment. Charter Schools sought reconsideration, which was denied. That administrative process is underway for at least some, if not all, of the Charter Schools, although this process has been stayed

---

**membership of the prior school year,** as defined in section 2501(20), minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the department. This amount shall be paid by the district of residence of each student.

24 P.S. § 17-1725-A(a)(2) (emphasis added).

4

pending the outcome of this litigation. In addition, Charter Schools also challenge the adequacy of the administrative process under these circumstances.

Charter Schools allege that, contrary to PDE's conclusion, SDP possessed all the necessary information within its existing records to calculate the required statutory amount owed to them, prior to October 1, 2016. The brick-and-mortar charter schools aver that the relevant information was timely submitted when they placed that information in the "SDP database which [wa]s used by the SDP to calculate the monthly payment to the [Charter Schools] and the SDP itself applie[d] the rate to the data with no input from the [Charter Schools]." (Petition ¶ 37.) The cyber charter schools aver that they met this requirement by submitting "invoicing prior to October 1, 2016[,] to the SDP with all documentation required for the SDP to make the calculation by applying the correct rate during the 2015-2016 [SY]." (*Id.* ¶ 39.) Charter Schools allege:

> The CSL does not require any separate or additional submission such as a "reconciliation report" to constitute "final documentation" in order to trigger PDE's mandatory duty to redirect, where, as here, the student count documentation required for the SDP to calculate and make the statutory payment was previously submitted by the [Charter Schools] to the SDP in the ordinary course . . . .

(*Id.* ¶ 44.)

Charter Schools assert five Counts in the Petition:

- Count I seeks declaratory judgment[5] against Department declaring that the Guidelines violate the CSL, all school districts must be told to pay the

---

[5] Under the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541, "[c]ourts of record . . . shall have [the] power to declare rights, status, and other legal relations whether or not further relief is or could be claimed" with the purpose of settling and "afford[ing] relief from uncertainty and insecurity with respect to rights, status, and other legal relations." 42 Pa. C.S. §§ 7532, 7541(a). The Declaratory Judgments Act is to be liberally construed and administered. 42 Pa. C.S. § 7541(a). Declaratory relief is appropriate when there exists an actual controversy, which is

statutory rate, Department cannot impose or create additional requirements on a charter school's right to redirection beyond those in the CSL, Department does not have the discretion to evaluate whether a charter school's redirection request is "properly documented" before withholding and redirecting the requested amounts, and Department must redirect all amounts owed to Charter Schools by District and their refusal to do so violates the CSL.

- Count II seeks declaratory relief against District declaring that they had no legal basis for underpaying Charter Schools, their failure to pay Charter Schools the statutory rate violated the CSL, they have no authority to rely on some other entity, like PDE, to avoid their mandatory duty to pay the statutory rate, they cannot transfer their duty to make these required payments to Department, and their duty to calculate and pay Charter Schools the statutory rate is independent of any action by Department.

- Count III requests a writ of mandamus[6] against Department directing them to withhold all state payments to SDP and redirect the appropriate amounts to the Charter Schools. Counts III(A) through III(H) set forth the relevant amounts claimed to be due each of the Charter Schools.

- Count IV requests a writ of mandamus against District requiring them to pay Charter Schools the statutory amount for the 2015-2016 SY. Counts IV(A) through IV(H) set forth the relevant amounts claimed to be due to each of the Charter Schools.

---

"when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Richard Allen Preparatory Charter Sch. v. Dep't of Educ.*, 161 A.3d 415, 422 (Pa. Cmwlth. 2017) (citation omitted), *aff'd*, 185 A.3d 984 (Pa. 2018) (per curiam).

[6] "A writ of mandamus compels the performance of a ministerial and mandatory duty." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 75 (Pa. Cmwlth. 2010) (*Chester I*). To establish the right to mandamus, the moving party "must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy." *Id.* A duty is mandatory if it is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Id.* (quoting *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005)). If the public official has the "discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised." *Id.* at 75 (emphasis and citation omitted).

6

- Count V seeks injunctive relief against all of the Respondents enjoining the SDP from relying on the Guidelines and PDE from delaying and refusing to withhold and redirect funds to Charter Schools.

As additional relief in Counts III and IV, Charter Schools request an award of attorneys' fees and costs pursuant to Section 1726 of the Judicial Code, 42 Pa. C.S. § 1726, compensatory and punitive damages, and consequential losses.

Department and District filed Answers and New Matter to the Petition wherein they contend Charter Schools had not submitted final documentation of the amount of payment to be made for the 2015-2016 SY to SDP by October 1, 2016, which is required by Section 1725-A(a)(5) to trigger Department's withholding and redirection obligation. Department further avers facts regarding the calculation of the per student rates beginning in the 2012-2013 SY. Under those calculations, in prior school years, SDP's initial per student rates and its final per student rates reflected minor decreases for nonspecial education rates and increases in special education rates. It was only in the 2015-2016 SY that the final rates decreased for both student categories. Department avers that, prior to the April 2017 withholding requests, Charter Schools accepted the use of the Guidelines without objection, which renders Charter Schools' current challenge barred by a six-month statute of limitations or laches. District also asserts Charter Schools' claims are barred by the statute of limitations. Department and District further assert that Charter Schools' claims should be dismissed for failure to exhaust the available statutory remedy.

In their Answers to the New Matter, Charter Schools deny that Department had the ability to force charter schools to accept or object to the Guidelines and aver that they were told they had no choice but to accept the Guidelines. Charter Schools contend there is no statute of limitations on their challenge to the Guidelines and, if there was, it is tolled by the actions of Department and District. They further deny that the 2016 Amendment was intended to provide a reconciliation process different

from the one that already existed or to restrict charter schools' ability to challenge a violation of the CSL. Charter Schools further aver that the reconciliation process with SDP occurred prior to the 2016 Amendment's effective date. According to Charter Schools, they exhausted their administrative remedy when they submitted their withholding and redirection requests to Department and those requests were denied.

## B. Applications for Summary Relief

After limited discovery, the parties filed their respective Applications for Summary Relief with this Court.[7] The respective opposing parties filed answers/responses to the Applications and briefs in support of or in opposition to the Applications. In their briefs in opposition, Charter Schools indicated that they were underpaid not $1.8 million, as initially pled, but $10.7 million due to SDP's use of "fifteen non-statutory deductions." (Charter Schools' Brief (Br.) in Opposition to Department's Application at 12-13; Charter Schools' Br. in Opposition to District's Application at 25-26.) Department and District sought to strike this alleged attempt to amend the Petition, which was denied. The order denying the application to strike explained "Petitioners' damages, if any, are dependent on a determination as to the proper application of Section 1725-A of the [CSL] and evidence in support thereof." (Order, Feb. 25, 2019.) The three Applications are now ready for this Court's consideration.

---

[7] Pennsylvania Rule of Appellate Procedure 1532(b) permits a party to file an application for summary relief "if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). A court may grant summary relief when the moving party's right to judgment is clear and no material facts of issue are in dispute. *Eleven Eleven Pa., LLC v. Com.*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017). In considering an application for summary relief, the court "must view the record in a light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." *Id.*

### 1. Department's Application

In the Application, Department seeks dismissal of Counts I, III, III(A)-III(H), and V because Charter Schools did not submit their final documentation to SDP on or before October 1 as required by Section 1725-A(a)(5).[8]  Department argues that the 2016 Amendment expressly includes a reconciliation process that requires a charter school to submit "final documentation of payment to be made" to the school district no later than October 1 for the students enrolled during the prior school year before filing a withholding request with PDE.  24 P.S. § 17-1725-A(a)(5).  Under the plain statutory language, Department asserts the mandatory and ministerial duty to withhold payments from a school district and pay those funds to a charter school

---

[8] Section 1725-A(a)(5) of the CSL states:

> (5) Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year.  A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding pursuant to Article XXV.  If a school district fails to make a payment to a charter school as prescribed in this clause, the secretary shall deduct the estimated amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school.  **No later than October 1 of each year, a charter school shall submit to the school district** of residence of each student **final documentation of payment to be made** based on the average daily membership for the students enrolled in the charter school from the school district **for the previous school year**.  **If a school district fails to make payment** to the charter school, **the secretary shall deduct and pay the amount as documented by the charter school** from any and all State payments made to the district **after receipt of documentation** from the charter school **from the appropriations for the fiscal year in which the final documentation of payment was submitted** to the school district of residence.

24 P.S. § 17-1725-A(a)(5) (emphasis added).  The provisions in subsection (5) beginning with "[n]o later than October 1 of each year" were added on July 13, 2016, and were immediately effective.  *Id.*

is not implicated unless a charter school timely provides to a school district the required final documentation and the school district denies payment. Here, Charter Schools' final documentation for the 2015-2016 SY was not submitted by October 1, 2016. Department contends Charter Schools' argument that they had already provided SDP with sufficient documentation, or were not required to provide any additional documentation, does not give effect to the requirements added to Section 1725-A(a)(5), rendering those provisions surplusage. Thus, Charter Schools' claims that PDE erred in not automatically withholding monies from SDP and redirecting them to Charter Schools must be dismissed. Department notes this interpretation does not leave Charter Schools without relief because administrative proceedings to determine how much Charter Schools were underpaid based on SDP's reliance on the Guidelines, which is an issue between Charter Schools and SDP, are ongoing. As for the declaratory and injunctive relief Charter Schools' request in Counts I and V based on the Guidelines' invalidity, Department observes that due to PDE's rescission of the Guidelines, those issues are now moot.

Department also asserts that Charter Schools' request for damages, attorney's fees, and costs must be dismissed as they are barred by sovereign immunity and not subject to an exception thereto. *See Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Cmwlth. 2010) (emphasis omitted) ("[S]overeign immunity does apply to an action seeking to compel state parties to act or seeking to obtain money damages or recover property from the Commonwealth.").

Charter Schools respond that Department is not entitled to summary relief based on the 2016 Amendment. They argue the 2016 Amendment to Section 1725-A(a)(5) is inapplicable here because: (1) that amendment, effective July 13, 2016, is not retroactive, *KIPP Philadelphia Charter School v. Department of Education*,

161 A.3d 430, 441 (Pa. Cmwlth. 2017), and Charter Schools' reconciliation process with SDP was completed before July 13, 2016; and (2) this matter does not involve reconciliation but a challenge to the per student rate SDP used to calculate its 2015-2016 SY payments to Charter Schools. Charter Schools' request to PDE was filed in April 2017 because that is when Charter Schools discovered that the Guidelines were not mandatory, as SDP had represented to them. If the 2016 Amendment does apply, Charter Schools assert they had already provided SDP with the information necessary to properly calculate the amount SDP owed Charter Schools and, therefore, no additional or "final documentation" was necessary. They further argue that the 2016 Amendment does not require Charter Schools to assert a claim by October 1, but to document or provide proof of a claim to SDP by October 1. Charter Schools assert the information they previously provided to SDP was the same information as was in the reconciliation report filed with PDE in April 2017 and was sufficient to allow SDP to object. Accepting this factual averment as true, Charter Schools argue Department's Application must be dismissed because the CSL's funding provisions are intended to protect charter schools, as the legislature has determined that more harm would befall a charter school that is not timely or accurately paid than the school district that would experience only a delay in receipt of its state subsidy if it is determined that the school district is correct. *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 78 (Pa. Cmwlth. 2010) (*Chester I*). As for attorneys' fees and costs, Charter Schools note the claims here are based on similar conduct as in *KIPP*, for which the Court sanctioned PDE for its arbitrary conduct and awarded damages. 161 A.3d at 443-45.

11

## 2. District's Application

In District's Application, District argues Charter Schools' Petition should be dismissed and District's Application granted because Charter Schools have failed to state a claim. District adopts Department's interpretation of Section 1725-A(a)(5) regarding Department's obligation to automatically withhold and redirect SDP's state funds. District also argues that because Charter Schools did not timely comply with Section 1725-A(a)(5)'s final documentation requirement, Charter Schools cannot assert their underpayment claims directly against SDP **at all**. District argues Charter Schools' interpretation of Section 1725-A(a)(5) in which "final documentation" includes the information a charter school previously provided to a school district prior to October 1 is inconsistent with the remainder of the section and renders the October 1 deadline meaningless. District asserts that requiring a charter school to provide final documentation by a time certain provides financial certainty to school districts, which will be able to better budget if they do not receive documentation of alleged underpayments by October 1 and know no such claims are outstanding. District also contends that SDP's per student rate adjustments were in accordance with the Guidelines and PDE's directives issued to all school districts in the Commonwealth. In light of these directives, which District had no reason to believe were invalid at the time, District maintains SDP acted properly in adjusting its payments to Charter Schools. Therefore, according to District, Charter Schools' claims that SDP is required to reimburse them the amount underpaid are without merit.

Charter Schools respond to District's Application that, notwithstanding PDE's obligations regarding withholding and redirecting a school district's state funding, SDP has an independent duty to make timely and proper payments to

charter schools. Charter Schools argue Department's interpretation of the statutory language is incorrect and the 2016 Amendment does not apply to their request. Charter Schools note that PDE has no authority under the CSL to prescreen withholding and redirection requests and, even if it did, this does not alter SDP's duty to timely pay Charter Schools the appropriate statutory amounts. Charter Schools observe that the brick-and-mortar schools do not submit anything to SDP for payment because that information is electronically contained within SDP's database. Thus, there was no additional documentation Charter Schools had to submit to SDP in order for SDP to make the correct payments. Charter Schools also argue that the Guidelines upon which SDP based its mid-year reduction of per student rate have already been found to be a violation of the CSL. *First Phila. I*, 179 A.3d at 138. Accordingly, Charter Schools assert District's claim that they are excused from having to correct the underpayment must be rejected.

### 3. Charter Schools' Application

Finally, in their Application, Charter Schools argue that all Respondents' positions regarding the 2016 Amendment would prevent a charter school from obtaining relief for an underpayment if a claim for underpayment is not submitted to the school district of residence by October 1. They maintain this interpretation is not supported by the plain language of Section 1725-A(a)(5), which does not say a claim is barred if not presented to a school district prior to October 1. Even if the language did suggest a cutoff, Charter Schools argue, the trigger would be the submission of "final documentation" not the submission of a claim. Charter Schools submitted their documentation regarding the 2015-2016 SY enrollment and special education status of their students to SDP during the school year and, therefore, prior to October 1, 2016 – that is all that is required. They assert that the contrary position

13

would preclude a charter school from raising a challenge to the rate used to calculate the per student payments unless it is discovered and submitted by October 1, an absurd result that must be avoided. Charter Schools maintain their interpretation of Section 1725-A does not render the October 1 date meaningless, as the continued failure of a charter school to comply with the deadline could be used as grounds to close a charter school. Alternatively, if there was a cutoff where a reconciliation claim is not made by October 1, Charter Schools are entitled to a declaration that PDE should withhold funds from SDP under Section 1725-A, because "[n]othing in the language added . . . in 2016 indicates that it was intended to address the situation where a charter school is underpaid because a school district has improperly calculated the amount it owes per student under Section 1725-A." (Charter Schools' Application ¶ 26.)

Charter Schools also argue Department's obligation to withhold state subsidies from a school district and redirect them to a charter school is mandatory and ministerial. *Chester I*, 996 A.2d at 77. They maintain the administrative process set forth in Section 1725-A(a) is an inadequate remedy, as explained in *First Philadelphia I*, because Department refuses to make the required withholdings and cannot address Charter Schools' claims that the Guidelines violate Section 1725-A(a). In addition, Charter Schools argue SDP's obligation to pay Charter Schools the amount required by the CSL is equally mandatory, which the 2016 Amendment did not alter.[9] Thus, Charter Schools assert all of the elements of mandamus are

_____

[9] Charter Schools also appear to assert that the written charters required SDP to pay them in accordance with Section 1725-A(a), thereby potentially raising a contractual claim. (Charter Schools' Application ¶ 33.) Department replies that, to the extent Charter Schools attempt to assert a contract claim, charters are not contracts but a government license. *Cmty. Acad. of Phila. Charter Sch. v. Phila. Sch. Dist. Sch. Reform Comm'n*, 65 A.3d 1023, 1029 (Pa. Cmwlth. 2013).

satisfied, and their right to relief against Department and District on those claims is clear.

Department responds that Charter Schools are not entitled to relief, mandamus or otherwise, because its duty to withhold and redirect SDP's funds was not implicated due to Charter Schools' failure to submit final documentation to SDP by October 1. Thus, they argue, mandamus cannot lie under these circumstances. The remainder of Department's arguments are the same as those in favor of their own Application. District asserts that Charter Schools are not entitled to summary relief, a declaratory judgment, or a writ of mandamus as a matter of law if the Court agrees with the interpretation of the 2016 Amendment offered by District and Department. If a declaration is warranted, it is in favor of Department and District for the reasons set forth in their own Applications.

## II. Discussion

### A. Preliminary Considerations

#### 1. Invalidity of Guidelines

We have previously addressed the validity of the Guidelines established by PDE for use by school districts to calculate the amounts owed to charter schools, and, ultimately, found that those Guidelines violated the CSL. *First Phila. I*, 179 A.3d at 138. In *First Philadelphia I*, a different group of charter schools challenged, during the 2016-2017 SY, SDP's reliance on the Guidelines to pay those schools less than the statutory rate in that school year. Those charter schools argued that the Guidelines violated the plain language of the CSL and sought declaratory, mandamus, and injunctive relief against SDP, Department, and others. After concluding that the statutory remedy available was inadequate, we held "that PDE exceeded its authority in developing and applying Guidelines, for the stated purpose

of implementing Section 1725-A(a) of the CSL, that are in flagrant derogation of that statutory provision and further by instructing every school district in the Commonwealth to adhere to those guidelines." *Id.* Subsequently, PDE rescinded the Guidelines. *See First Phila. Preparatory Charter Sch. v. Com.* (Pa. Cmwlth., No. 159 M.D. 2017, filed Jan. 9, 2019) (*First Philadelphia II*).

In light of this determination, we preliminarily address Charter Schools' requested injunctive and declaratory relief asserting the invalidity of the Guidelines and the continued use of the Guidelines as a basis for school districts to pay charter schools less than the statutory amount. Because the Court already has held that the Guidelines violate the CSL and the Guidelines have been **rescinded** by PDE, Charter Schools' requests that Department and District be enjoined from using the Guidelines to pay less than the statutory amount, and a declaration that the Guidelines violate the CSL, are moot. *See First Phila. II*, slip op. at 13-15 (holding that claim for declaratory relief finding the Guidelines violated the CSL was moot after *First Philadelphia I* and PDE's rescission of the Guidelines). Following *First Philadelphia I* and *II*, it is clear that school districts must use the statutory amount to calculate the amounts owed to charter schools, not the amounts calculated under the Guidelines. There is no need for another determination addressing issues that have already been resolved, and, therefore, Counts I and V are dismissed as moot to the extent they requested such relief.

## 2. Statutory Construction

Because the Guidelines violated the CSL, there are school districts that paid charter schools less than the statutory amount based on those Guidelines creating an underpayment. This is the first case in which charter schools' efforts to recover those alleged underpaid amounts through the withholding and redirection process

16

set forth in Section 1725-A(a)(5) occurred after the 2016 Amendment, raising the interpretation of the October 1 deadline.[10] We review the statutory language to ascertain the legislature's intent regarding the applicability and effect of the 2016 Amendment on Department's withholding and redirection duties and SDP's obligation to properly pay Charter Schools.

As always, when we interpret a statute we are guided by the principles of Section 1921 of the Statutory Construction Act of 1972, including that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). Thus, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "The best indication of legislative intent is the plain language of the statute." *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 31 A.3d 657, 663 (Pa. 2011). We are to construe the statutory language, if possible, to give effect to all of its provisions. 1 Pa. C.S. § 1921(a). It is "[o]nly when the words of the statute are not explicit" that the court should resort to statutory construction to ascertain the legislature's intent. 1 Pa. C.S. § 1921(c). However, courts should not, under the guise of statutory construction, rewrite or augment a statute's terms. *Discovery Charter Sch. v. Sch. Dist. of Phila.*, 166 A.3d 304, 318 (Pa. 2017).

The statutory language at issue provides:

> (5) . . . . **No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made** based on the average daily membership for the students enrolled in the charter school from the school district **for the previous school year**. **If a school district fails to make payment to the charter school, the secretary shall deduct and pay the amount as documented by the charter school from any**

---

[10] The claims of underpayment in *First Philadelphia I* were filed during the school year in which the underpayments were made.

17

**and all State payments made to the district <u>after receipt of documentation</u> from the charter school <u>from the appropriations for the fiscal year in which the final documentation of payment was submitted</u> to the school district of residence.**

24 P.S. § 17-1725-A(a)(5) (emphasis added).

### B. *Department's Application*

Department argues the 2016 Amendment applies, and pursuant thereto, the duty to withhold and redirect is not implicated unless a charter school submits final documentation of the amount to be paid for the previous school year to the school district by October 1. Charter Schools argue the 2016 Amendment does not apply to them because they had already completed their reconciliation with SDP by July 13, 2016, and if it does, the documentation they provided meets the requirement.

The 2016 Amendment, enacted on July 13, 2016, reflected that it was effective immediately. In *KIPP*, we held that the 2016 Amendment "was not expressly made retroactive" and "controls **all reconciliation requests submitted as of July 13, 2016**." 161 A.3d at 441 & n.13 (emphasis added). Although Charter Schools' 2015-2016 SY reconciliation process with SDP was completed by July 13, 2016, at issue here is Charter Schools' claim in **April 2017** that they were still owed money for the 2015-2016 SY. It was because they believed they were underpaid that Charter Schools **filed reconciliation requests and reports** with PDE in April 2017 seeking relief in the form of withholding the underpaid amount from SDP's state subsidy and redirecting this amount to Charter Schools. As Charter Schools' reconciliation requests with PDE were submitted after July 13, 2016, the 2016 Amendment is applicable to their underpayment claims.

Charter Schools contend that the documentation they provided to SDP prior to October 1 was sufficient to meet the "final documentation" requirement. Charter

Schools assert that, even if additional documentation was required, the submission of that documentation after October 1 should not preclude their ability to obtain relief. They stress that they did not learn that the Guidelines were not applicable until **after** October 1.

The 2016 Amendment was enacted in response to this Court's decision in *Chester Community Charter School v. Pennsylvania Department of Education*, 44 A.3d 715 (Pa. Cmwlth. 2012) (*Chester II*), and the PDE's subsequent application of that case. In *Chester II*, we recognized that a charter school could file a request for withholding and redirection, in that case based on an underpayment due to the school district's failure to use the correct per student rate, and that the Department had a mandatory duty to comply with that request. *Id.* at 720. However, we held that the requested funds could **only** be withheld from the subsidies for the school year in which the underpayment occurred. Thus, funds could **not** be withheld from the following school year, requiring any underpayment to be challenged within the current school year in order for a charter school to obtain relief. Notwithstanding *Chester II*, PDE continued, until 2016, to allow charter schools to file reconciliation requests seeking withholding and redirection outside the fiscal school year in which the underpayment was made. *KIPP*, 161 A.3d at 433-34. In 2016, PDE effectively "declared it would only redirect delinquent school districts' funding . . . during the current fiscal year and a school district's failure to pay outstanding prior-year balances [was] a matter for the charter schools and the school districts to resolve." *Id.* at 434.

At the change in PDE's practice, the General Assembly enacted the 2016 Amendment. In *KIPP*, we explained:

> The . . . 2016 [A]mendment . . . **reflects the General Assembly's intent that [Department] should not be involved in the**

19

**reconciliation process unless and until a dispute arises between the charter school and a school district**. *See* Act of July 13, 2016, P.L. 716 (Act 86). Notably, however, in sharp contrast to [Department's] attempts to limit reconciliation to the current school year, **the General Assembly memorialized** [Department's] **historical practice and declared in Act 86 that a charter school has until October 1st following the applicable school year to submit final reconciliation documents to a school district and, if the school district fails to pay the charter school, "the [S]ecretary shall deduct and pay" the charter school** from the school district's subsidies "for the fiscal year in which the final documentation of payment was submitted to the school district . . . ." 24 P.S. § 17–1725–A(a)(5).

*KIPP*, 161 A.3d at 436 n.6 (emphasis added). The Court, in *KIPP*, reiterated that the 2016 Amendment was to "**remove [Department] from the reconciliation process, unless and until a school district fails to pay a charter school** . . . ." *Id.* at 441 & n.12 (emphasis added).

The 2016 Amendment directs charter schools to submit "final documentation" to the school district reflecting the amount that remains to be paid for the previous school year no later than October 1. 24 P.S. § 17-1725-A(a)(5). The second sentence of the 2016 Amendment, which sets forth the Secretary's mandatory and ministerial duty to withhold and redirect state payments to the charter school, connects that duty **to the school district's receipt** of the documentation **by October 1** and the **school district's failure to pay based on that final documentation**. *Id.* This connecting language supports Department's position that their duty to withhold and redirect funds is not implicated unless the "final documentation" is **timely** submitted to a school district and the school district does not pay. Charter Schools argue that the documentation required relates to the number of students, and not the per student rates, which are not known by charter schools. However, to the extent the 2016 Amendment was enacted in response to *Chester II*, we note that case did not involve a charter school's challenge based on an underpayment due to an incorrect number

20

or misclassification of students, but on a school district's use of the **wrong rate per student**. More importantly, the statutory language does not include the limitation asserted by Charter Schools, but uses the phrase "final documentation of payment to be made," which is broad enough to encompass both types of challenges. 24 P.S. § 17-1725-A(a)(5). Accordingly, the language added by the 2016 Amendment covers reconciliation requests based on the number and classification of students or the rate per student paid, and Department did not violate the mandatory and ministerial duty by first reviewing whether the final documentation prerequisite was satisfied.

Here, Charter Schools did not present "final documentation" to SDP by October 1, 2016, setting forth the amounts they claimed to have been underpaid for the entire 2015-2016 SY; this information was in their reconciliation reports filed with PDE in April 2017. Charter Schools argue no additional documentation was required because SDP already had all of the information necessary to determine the amounts remaining to be paid to Charter Schools for the 2015-2016 SY. However, the 2016 Amendment does contain the word "final," as descriptive of the required "documentation." The CSL does not define "final," but it is generally understood as "relating to or occurring at the end or conclusion" or "conclusive, decisive." Webster's Third New International Dictionary 851 (2002). Interpreting the phrase "**final** documentation of payment to be made," 24 P.S. § 17-1725-A(a)(5) (emphasis added), to refer to documentation that is **already** in a school district's possession as a result of the normal monthly reporting/payment process does not give effect to the word "final." The 2016 Amendment places the burden on charter schools to submit final documentation to the school district reflecting what payment is to be made, not on the school district to search its databases to calculate what amounts may remain

21

outstanding. These monthly reports filed during the school year, which per the Petition and Charter Schools' Application relate to the number and special education status of students enrolled in Charter Schools in a particular month (Petition ¶¶ 37, 39, 44; Charter Schools' Application ¶ 21), do not "relat[e] to . . . the end or conclusion" of that school year, and would not be "conclusive, decisive" as the entire amount that would remain to be paid for the previous school year. Webster's Third New International Dictionary at 851. Notably, in this case, the documents already in SDP's possession would not have reflected the amount Charter Schools now claim they should be paid because those documents would have included the per student amount Charter Schools now assert was not correct.

We acknowledge Charter Schools' explanation that they did not know about the underpayment until after October 1, 2016, and could not file their claims prior to that date. But, based on the plain statutory language, the remedy of Department's withholding and redirecting the state funds in Section 1725-A(a)(5) is available only when the amount of payment to be made is submitted to the school district by October 1. Because Charter Schools did not provide SDP by October 1, 2016, with final documentation of the amount of payment they subsequently requested from PDE in April 2017, Department's duty to withhold and redirect state funds to Charter Schools was not implicated. Given that it was PDE's Guidelines that were responsible for the underpayment, and that Department acknowledges that Charter Schools were underpaid, the application of this cutoff date may seem arbitrary; however, we are bound by the statutory language. Accordingly, Department is entitled to summary relief on these grounds. However, Department points out that the administrative process, already underway but stayed, remains available to Charter School to obtain a remedy for their alleged underpayment.

*C. District's Application*

District's Application claims that, because Charter Schools did not submit final documentation to SDP by October 1, 2016, SDP is relieved of its **entire** obligation to correct any underpayment for the 2015-2016 SY. At oral argument, District further argued that the withholding and redirection process set forth in Section 1725-A(a)(5) is the exclusive process and remedy for a charter school asserting it was underfunded. *See Vill. Charter Sch. v. Chester Upland Sch. Dist.*, 813 A.2d 20, 26 (Pa. Cmwlth. 2002). District asserts that with this remedy unavailable, Charter Schools have no other way of seeking repayment from SDP. Thus, District disagrees with Department that the administrative process remains available to Charter Schools through which they can challenge SDP's underpayment and obtain relief therefrom. Charter Schools reply that SDP has an independent obligation to pay them the statutory amount that was not affected by the 2016 Amendment and that summary relief, therefore, should not be granted.

After review, we find that the statutory language and decisions of this Court do not entitle District to summary relief. By its terms, the October 1 deadline set forth in Section 1725-A(a)(5) applies to Department's duty to withhold and redirect payment, and not to a school district's separate and distinct payment obligation under the CSL. Rather, the CSL requires that **school districts shall pay to charter schools the statutory rate** for the charter school's students. 24 P.S. § 17-1725-A(a)(2), (5). It is the school district that bears "the burden . . . to fund charter schools in the correct amount." *Chester I*, 996 A.2d at 78. The school districts' obligation to pay is not specifically limited by the October 1 deadline, which by its terms applies only to Department's withholding and redirection process. A charter school retains its ability to seek resolution of the underpayment directly from the school

23

district via the general administrative hearing process, described in *Chester II*, as recognized by Department. *See Chester II*, 44 A.3d at 722.

We recognize that, prior to *Chester II* and the 2016 Amendment, we stated that Section 1725-A(a)(5) and (6) (relating to the hearing held following a school district's challenge to the withholding) provided the exclusive process for claims of underpayment. However, after *Chester II,* in which we concluded that withholding could only be taken from current school year funds, and the 2016 Amendment, which codified Department's pre-*Chester II* process of accepting underpayment claims after the end of the relevant school year and by October 1, that statement is no longer accurate. This Court in *Chester II* and, subsequently, in *KIPP*, recognized there may be circumstances when withholding and redirection is unavailable and that, in those circumstances, an alternative administrative hearing process should be used to determine if an underpayment was made and, if so, the amount of the underpayment.[11] *KIPP*, 161 A.3d at 441; *Chester II*, 44 A.3d at 722. This process requires the Secretary to acknowledge receipt of the underpayment claim, notify the charter school that funds cannot be withheld and redirected, and direct the claim to the administrative process for a hearing, at which "the school district . . . has the burden to prove the claim is invalid." *Chester II*, 44 A.3d at 722. In *KIPP*, we explained that, under the facts in that case, Department had not complied with *Chester II* because a hearing was never scheduled and there were "no circumstance[s] presented . . . under which the Secretary could not withhold funds from the [school d]istrict's next fiscal year," therefore, the *Chester II* hearing process was "inapposite." *KIPP*, 161 A.3d at 440-41. After the 2016 Amendment, there can

---

[11] Nothing in the 2016 Amendment to Section 1725-A(a) altered the Court's conclusion in *Chester II* that an alternative administrative hearing process should be used in underpayment claims where automatic withholding and redirection are not available.

24

be circumstances where Department is unable to withhold and redirect a school district's state funds, such as those presented here. Further, unlike in *KIPP*, Department has complied with *Chester II*'s requirements, having acknowledged Charter Schools' reconciliation requests, advising them that withholding and redirection was unavailable due to their not submitting final documentation to SDP by October 1, 2016, and directing the claims to the administrative hearing process, which has been stayed pending the outcome of this litigation. Accordingly, because District's duty to pay Charter Schools the statutory amount for the 2015-2016 SY is unaffected by Charter Schools not submitting final documentation to SDP by October 1, 2016, and there remains an administrative process through which Charter Schools can seek repayment, District is not entitled to summary relief.

### D. Charter Schools' Application

Charter Schools' Application contends that they were underpaid in the 2015-2016 SY due to SDP's use of the Guidelines and that SDP is not relieved of its obligation to remedy that underpayment. However, while there is no dispute that SDP paid Charter Schools according to the Guidelines for the 2015-2016 SY, the precise amount of what may be owed remains a material question fact to be determined. Charter Schools initially requested just over $1.8 million in the Petition, but they now claim in briefs that their underpayment exceeds $10.7 million. As represented by the parties at oral argument, the amount of SDP's underpayment of Charter Schools is at issue in the currently-stayed administrative proceedings. This Court has held that the "administrative remedy is the exclusive remedy to hear disputes regarding payments made to charter schools by school districts," and has denied summary relief on this basis. *Chester II*, 44 A.3d at 722-23.

25

Although Charter Schools assert, citing *First Philadelphia I*, that this remedy is inadequate to address their claims that the Guidelines conflict with Section 1725-A(a) of the CSL and they were underpaid as a result, this is not the same situation as in *First Philadelphia I*. In that case, the validity of the Guidelines was the issue, and it was primarily on this basis that we held that the administrative remedy was inadequate. In doing so, we explained that PDE, the entity responsible for the Guidelines, would have simply applied those Guidelines to determine the adequacy of the school district's payments to the charter schools. *First Phila. I*, 179 A.3d at 137; *see also First Phila. II*, slip op. at 9. We stated "the adequacy of the statutory remedy is intertwined with the legality of the Guidelines." *First Phila. I*, 179 A.3d at 137.[12] The Guidelines have since been invalidated and rescinded; thus, Department would not apply them to ascertain the adequacy of SDP's payments to Charter Schools for the 2015-2016 SY. Further, Department has acknowledged in these proceedings that SDP remains obligated to pay Charter Schools the statutory amount for the 2015-2016 SY and that Charter Schools were underpaid for that school year. Under these circumstances, we disagree that Charter Schools are in the same position as the charter schools in *First Philadelphia* and that the administrative remedy is inadequate so as to allow for the grant of summary relief. Therefore, Charter Schools' Application is denied, and the remainder of the Petition is dismissed to allow Charter Schools' claims stayed in the administrative process to

---

[12] Having already held that the administrative remedy was inadequate in *First Philadelphia I*, the Court transferred the matter to the Court of Common Pleas of Philadelphia County when it found it no longer had jurisdiction to consider the charter schools' claims in that case. *First Phila. II*, slip op. at 15-16, Order.

26

proceed on an expedited basis.[13]  During those proceedings, SDP will bear the burden of proving that Charter Schools' claims are invalid.[14]  *Chester II*, 44 A.3d at 722.

### III.  Conclusion

For the foregoing reasons, we hold the following.  Charter Schools' requests for declaratory and injunctive relief based on the invalidity of the Guidelines and the need for school districts to pay the statutory amount set forth in Counts I and V of the Petition are dismissed as moot based on *First Philadelphia I* and *II*. Department's Application is granted, and Counts I, III, III(A)-III(H), and V are dismissed as to them.  Because Charter Schools did not submit final documentation of the amount to be paid for the 2015-2016 SY to SDP by October 1, 2016, as required by the 2016 Amendment to Section 1725-A(a)(5), Department did not have a statutory duty to withhold state funds from SDP and redirect those funds to Charter Schools.  District's Application is denied because the 2016 Amendment did not alter or otherwise limit District's obligation to pay Charter Schools the statutory amount for the 2015-2016 SY notwithstanding that Charter Schools did not provide SDP with final documentation of the amount to be paid by October 1, 2016.  Finally, Charter Schools' Application is denied because, although we agree they were underpaid due to SDP's use of the Guidelines and District remains obligated to

---

[13] It appears a similar issue of an alleged underpayment for the 2016-2017 SY between these parties is before a PDE Hearing Officer in separate administrative proceedings.  *See Antonia Pantoja Charter School v. Dep't of Ed.* (Pa. Cmwlth., No. 167 M.D. 2019) (Petition for Review setting forth allegations regarding, *inter alia*, ongoing administrative proceedings related to Charter Schools' request for withholding and redirection for the 2016-2017 SY and their attempt to increase the alleged amount of underpayment therein).  As the claims regarding the 2015-2016 SY underpayment and the 2016-2017 SY underpayment appear to be related, it may be prudent for them to be decided together on an expedited basis.

[14] Because of our disposition, we will not address Charter Schools' claims for attorney's fees, costs, punitive damages, and consequential losses.

resolve that underpayment, material facts remain outstanding and the administrative remedy, already begun, is adequate to address those outstanding issues. The remainder of Charter Schools' Petition is dismissed to allow Charter Schools' claims pending in the administrative process to proceed on an expedited basis.

_____

**RENÉE COHN JUBELIRER**, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Antonia Pantoja Charter School, | : | |
| Esperanza Academy Charter High | : | |
| School, Eugenio Maria de Hostos | : | |
| Charter School, John B. Stetson | : | |
| Charter School, Olney Charter High | : | |
| School, Aspira Bilingual Cyber | : | |
| Charter School, Esperanza Cyber | : | |
| Charter School, Pennsylvania Cyber | : | |
| Charter School, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 289 M.D. 2017 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Education, | : | |
| The Secretary of Education, Pedro A. | : | |
| Rivera (In His Official Capacity); | : | |
| Philadelphia City School District, and | : | |
| School Reform Commission, | : | |
| Respondents | : | |

## O R D E R

NOW, August 5, 2019, in accordance with the foregoing opinion, we hold the following:

- Counts I and V of the Second Amended Petition for Review (Petition) filed by Petitioner Charter Schools (Charter Schools) are **DISMISSED AS MOOT IN PART** as set forth in the foregoing opinion;

- The Application for Summary Relief filed by Commonwealth of Pennsylvania, Department of Education (PDE), and The Secretary of Education, Pedro A. Rivera (In His Official Capacity) is **GRANTED**, and

Counts I, III, III(A)-III(H), and V of the Petition are **DISMISSED** as to them;

- The Application for Summary Relief filed by the Philadelphia City School District and School Reform Commission is **DENIED**;

- The Application for Summary Relief filed by Charter Schools is **DENIED**, and the remainder of the Petition is **DISMISSED** to allow Charter Schools' claims pending before PDE, which are currently stayed, to proceed on an expedited basis.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge