IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Esperanza Academy Charter School, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia | : | |
| (Department of Education), | : | Nos. 1430-1431 C.D. 2022 |
| Respondent | : | |
| | : | |
| Esperanza Cyber Charter School, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia | : | |
| (Department of Education), | : | Nos. 1432-1433 C.D. 2022 |
| Respondent | : | Argued: September 11, 2024 |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY                                    FILED:  November 25, 2024


        Esperanza Academy Charter School and Esperanza Cyber Charter School (collectively, Charter Schools) petition this Court for review of the Commonwealth of Pennsylvania, Department of Education's (Department) Acting Secretary of Education Eric Hagarty's (Secretary) November 21, 2022 order (1) granting the Philadelphia School District's (School District) appeals, (2) concluding that the School District appropriately used budgeted expenditures to calculate the

Section 1725-A of the Charter School Law's (CSL)[1] tuition rates and the additional deductions listed on the PDE-363[2] as necessary to give effect to the CSL and other laws, and (3) directing the parties to calculate the rates using the amended budgets and the Average Daily Membership (ADM)[3] as reported by the Department to reconcile the subject school years. Charter Schools present five issues for this Court's review: (1) whether the Secretary erred by determining that the CSL permits school districts to take deductions not allowed by the CSL from the rate calculation to determine the amount the school districts shall pay charter schools for each student enrolled; (2) whether the Secretary erred by ignoring the School District's burden of proof; (3) whether the Secretary abused his discretion by failing to determine the School District's ADM; (4) whether the Secretary erred by allowing the School District to use what were purported to be amended budgets adopted as late as one day before the end of the school year to determine the amount the School District was to pay Charter Schools for each resident student enrolled in Charter Schools; and (5) whether the Secretary erred by allowing state-funded pre-kindergarten (Pre-K) expenditures to be deducted from the ratio calculation. After careful review, this Court affirms.

        Charter Schools alleged in a Petition for Review (Petition) in this Court's original jurisdiction that the School District underpaid them for the 2015-

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. § 17-1725-A. Section 1725-A of the CSL establishes the formula for calculating the tuition rates paid by school districts to charter schools.

[2] The PDE-363 is a form on which the School District purported to calculate what it owed charter schools under the CSL for the 2015-2016 school year for each student enrolled in a charter school who was a resident of the School District.

[3] ADM "is the term used for all resident pupils of the school district for whom the school district is financially responsible. It is calculated by dividing the aggregate days membership for all children on active rolls by the number of days the school district is in session." *See* https://www.education.pa.gov/Teachers%20-%20Administrators/School%20Finances/Finances/FinancialDataElements (last visited Nov. 22, 2024).

2016 school year (SY) because the School District followed the Department's student reimbursement guidance materials (Guidelines) that the Department rescinded after this Court ruled that they did not comply with the CSL.[4] *See Antonia Pantoja Charter Sch. v. Dep't of Educ.* (Pa. Cmwlth. No. 289 M.D. 2017, filed Aug. 5, 2019).[5] Based on the Department's rescission of the Guidelines, in April 2017, Charter Schools filed reconciliation requests and reports with the Department asking the Department to withhold and redirect the underpayments from the School District's state funding pursuant to Section 1725-A(a) of the CSL. The Department refused Charter Schools' reconciliation requests because it interpreted Section 1725-A(a)(5) of the CSL as requiring Charter Schools to submit documentation of the 2015-2016 SY underpayment amounts to the School District by October 1, 2016.

As a result of Cross-Applications for Summary Relief filed in *Antonia Pantoja*, this Court held:

> Charter [s]chools' requests for declaratory and injunctive relief based on the invalidity of the Guidelines and the need for school districts to pay the statutory amount set forth in [c]ounts I and V of the [p]etition [for review (petition)] are dismissed as moot based on [*First Philadelphia Preparatory Charter School v. Department of Education*, 179 A.3d 128 (Pa. Cmwlth. 2018) (]*First Philadelphia I*[)] and [*First Philadelphia Preparatory Charter School v. Commonwealth* (Pa. Cmwlth. No. 159 M.D. 2017, filed Jan. 9, 2019) (*First Philadelphia] II*[)]. The Department's Application is granted, and [c]ounts I, III, III(A)-III(H), and V are dismissed as to them [sic]. Because [c]harter [s]chools did not submit final documentation of the amount to be paid for the 2015-2016 SY to [the School District] by October 1, 2016, as required

---

[4] *See First Phila. Preparatory Charter Sch. v. Dep't of Educ.*, 179 A.3d 128 (Pa. Cmwlth. 2018).

[5] Antonia Pantoja Charter School, Eugenio Maria de Hostos Charter School, John B. Stetson Charter School, Olney Charter High School, and Pennsylvania Cyber Charter School were also petitioners in *Antonia Pantoja*, but are not parties in the instant cases.

by the 2016 Amendment to Section 1725-A(a)(5) [of the CSL], [the] Department did not have a statutory duty to withhold state funds from [the School District] and redirect those funds to [c]harter [s]chools. [The School] District's Application is denied because the 2016 Amendment did not alter or otherwise limit [the School] District's obligation to pay [c]harter [s]chools the statutory amount for the 2015-2016 SY[,] notwithstanding that [c]harter [s]chools did not provide [the School District] with final documentation of the amount to be paid by October 1, 2016. Finally, [c]harter [s]chools' Application is denied because, although [this Court] agree[s] they were underpaid due to [the School District's] use of the Guidelines and [the School] District remains obligated to resolve that underpayment, material facts remain outstanding and **the administrative remedy**, **already begun**, **is adequate to address those outstanding issues**. **The remainder of [c]harter [s]chools' [p]etition is dismissed to allow [c]harter [s]chools' claims pending in the administrative process to proceed on an expedited basis**.

*Antonia Pantoja*, slip op. at 27-28 (emphasis added).

As a result of the administrative process, on November 21, 2022, the Secretary: (1) granted the School District's appeals; (2) concluded that the School District appropriately used budgeted expenditures to calculate the Section 1725-A of the CSL's tuition rates, and the additional deductions listed on the PDE-363 as necessary to give effect to the CSL and other laws; and (3) declared that the parties are to calculate the rates using the amended budgets and ADM, as reported by the

4

Department to reconcile the subject school years. Charter Schools appealed to this Court.[6] On December 30, 2022, the School District filed a Notice of Intervention.[7]

Charter Schools first argue that the Secretary erred by determining that the CSL permits school districts to take deductions not allowed by the CSL from the rate calculation to determine the amount the school districts shall pay charter schools for each student enrolled. Charter Schools contend that the CSL allows school districts to take only limited deductions when calculating how much they owe charter schools for each student attending the charter school who resides in the school district. Charter Schools assert that despite the CSL's clear language on this issue, the Department found that the School District's use of the additional deductions to reduce payments to Charter Schools did not alter the CSL's legislative funding formula.

The School District rejoins that contrary to Charter Schools' arguments, the Secretary found that in calculating the payment rates, the exclusion of expenditures funded through federal grant dollars, Pre-K expenditures, and the designated Ready to Learn Block Grant (RTLBG)[8] funds directly correlates to the legal obligations that govern the use of those funds. The School District contends that by recognizing the competing legal obligations, the Secretary correctly reconciled the CSL's existing statutory payment scheme (i) consistently with other

---

[6] "This Court's . . . review of a decision of the Secretary . . . is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Sch. Dist. of Phila. v. Jones*, 139 A.3d 358, 363 n.3 (Pa. Cmwlth. 2016) (quoting *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007)).

[7] Northern Lehigh School District, Bethlehem Area School District, School District of Pittsburgh, and Pennsylvania School Boards Association filed amicus curiae briefs in support of the School District's position.

[8] The RTLBG is a grant established in two pieces over different legislative sessions. The larger piece of the RTLBG is available to school districts and charter schools. The smaller share of the grant is only for school districts.

5

state law provisions giving effect to all statutory provisions as required under the Statutory Construction Act of 1972 (SCA),[9] and (ii) in a manner that avoids the CSL conflicting with federal law in violation of the federal preemption doctrine. The School District asserts that the Secretary's decision does not violate or change the CSL funding formula.

Initially, Section 1725-A(a) of the CSL provides, in relevant part:

Funding for a charter school shall be provided in the following manner:

(1) There shall be no tuition charge for a resident or nonresident student attending a charter school.

(2) For non-special education students, the charter school shall receive for each student enrolled **no less than the budgeted total expenditure per** [**ADM**] **of the prior school year**, as defined in [S]ection 2501(20) [of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 25-2501(20),] **minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the** [**D**]**epartment**. This amount shall be paid by the [school] district of residence of each student.

(3) For special education students, the charter school shall receive for each student enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the [school] district of residence's total special education expenditure by the product of multiplying the combined

---

[9] 1 Pa.C.S. §§ 1501-1991.

percentage of [S]ection 2509.5(k) [of the School Code, added by Section 18 of the Act of August 5, 1991, P.L. 219,] times the [school] district of residence's total [ADM] for the prior school year. This amount shall be paid by the [school] district of residence of each student.

24 P.S. § 17-1725-A(a) (emphasis added). However, in addition to those items listed above, the PDE-363 includes "Deductions from Total Expenditures" for: regular education (federal only); special education; vocational education (federal only); other instructional programs (federal only); Pre-K (federal only); Pre-K (state Pre-K counts only); pupil personnel (federal only); instructional staff (federal only); administration (federal only); pupil health (federal only); business (federal only); operation and maintenance of plant services (federal only); central (federal only); other support services (federal only); operation of noninstructional services (federal only); and RTLBG. *See* https://www.psba.org/wp-content/uploads/2023/03/PDE-363.pdf (last visited Nov. 22, 2024).

> Our General Assembly, unlike our federal counterpart, has dictated explicit considerations via the [SCA] regarding how to discern its statutory intent.
>
> Pursuant to the [SCA], the overriding object of all statutory interpretation and construction "is to ascertain and effectuate the intention of the General Assembly" in enacting the statute under review. 1 Pa.C.S. § 1921(a). If statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). Thus, when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent.

*Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 994 (Pa. 2020).

While Section 1725-A of the CSL does not include the additional PDE-363 deductions, it does reference Section 2501(20) of the School Code, which states: "A school district's total expenditures shall include all General Fund expenditures

7

and other financing uses for a school year, as designated in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems." 24 P.S. § 25-2501(20). That provision does not *require* the inclusion of expenditures paid for through federal grant funds in the budget. Indeed, Charter Schools admit that federal grant funds should not be included in the total expenditures. Charter Schools argue that since the School District included them, under Section 1725-A of the CSL, it cannot now deduct them. However, because the only permissible use of those funds is for the benefit of the School District's students, it is clear that the School District is not permitted to divert any of its federal funding to charter schools. Allowing these funds to remain part of the tuition calculation diverts them from the intended recipient, the School District's students.[10] As such, the Secretary correctly concluded that these deductions must be permitted.

Concerning the RTLBG, the CSL itself is silent on whether the RTLBG is deductible from charter school funding. However, The Fiscal Code[11] 2015-2016 Budget Implementation provided:

> (21) From the appropriation for the [RTLBG], funds shall be distributed to school entities as follows:
>
> (i) Each school entity shall receive:
>
> . . . .
>
> (B) A [RTLBG] subsidy equal to the amount paid during the 2014-2015 [SY] under [S]ection 1722-L(21)(ii) [of The Fiscal Code].

---

[10] In general, public schools have three primary sources of funding: federal, state, and local. The relative amount of funding from each of these three sources differs between charter schools and district schools. While charter schools receive less total funding than district schools, they usually receive a higher proportion of their funding from states and a lower proportion from local sources. *See* https://data.publiccharters.org/digest/charter-school-data-digest/how-are-charter-schools-funded (last visited Nov. 22, 2024).

[11] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1-1805.

8

. . . .

>(22) **Notwithstanding any provision of law to the contrary**, **the revenues received by a school district under paragraph (21)(i)(B) shall not be included in the school district's budgeted total expenditure** per [ADM] used to calculate the amount to be paid to a charter school under [S]ection 1725-A(a)(2) and (3) of the [School Code].

72 P.S. § 1722-L(21)(i)(B), (22)[12] (emphasis added).  Similar to the federal funds, since the RTLBG is not to be included in the School District's total expenditures, the Secretary properly concluded that these deductions must also be permitted. Accordingly, the Secretary properly determined that the School District was authorized to take deductions not specified in the CSL from the calculation to determine the amount the School District shall pay Charter Schools for each student enrolled.

Charter Schools next contend that the Secretary erred by ignoring the School District's burden of proof.  Charter Schools assert that, in issuing his order regarding the burden of proof in this case, the Department's Hearing Officer ordered that the School District continued to bear the burden of proof and the burden of persuasion, including the burden to disprove any material fact and the burden to establish the governing law and application of that law to the facts of these matters. Charter Schools contend that the School District therefore had the burden of demonstrating that federal law *requires* the subject deductions.  Charter Schools claim that there is also a presumption against federal law preemption of state law. *See Dooner v. DiDonato*, 971 A.2d 1187, 1194 (Pa. 2009) (holding that "concepts of federalism and state sovereignty make clear that in discerning whether Congress intended to preempt state law, there is a presumption *against* preemption").  Charter

_____

[12] Section 1722-L of The Fiscal Code was added by Section 16 of the Act of November 23, 2020, P.L. 1140.

9

Schools proclaim that the School District failed to rebut this presumption because it did not offer any case law or expert testimony to support its position that compliance with Section 1725-A of the CSL as written would violate specific statutes.

The School District rejoins that it did not have the burden of proof in this circumstance under Section 1725-A(a)(5)-(6) of the CSL, and it is inaccurate for Charter Schools to suggest that the Secretary placed the burden of proof on Charter Schools or ignored the burden. The School District asserts that in *Antonia Pantoja*, this Court stated as follows: "[D]uring these proceedings, [the School District] will bear the burden of proving that [the c]harter [s]chools' claims are invalid." *Id.*, slip op. at 27 (relying on *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 44 A.3d 715 (Pa. Cmwlth. 2012) (*Chester II*)). The School District maintains that both the Hearing Officer's October 29, 2020 order and the Secretary's decision followed this Court's *dicta* in *Antonia Pantoja* concerning which party had the burden of proof.

The School District further asserts that the Hearing Officer simply required Charter Schools to present evidence of what they believed was the proper calculation of the per diem rate and the amounts due based upon the apparently agreed upon student days and payments previously made for each charter school. The School District declares that the Hearing Officer made the directive on which party has the burden of proof following the School District's October 15, 2020 motion to assign an initial burden of production to Charter Schools because Charter Schools produced multiple PDE-363s that contained differing amounts and differing rates, which caused uncertainty and confusion as to what was being adjudicated and what the School District had to prove (or, in this case, disprove). The School District states that it always retained the burden of proof and, as the Secretary found, met its burden of establishing why its original calculations made on the PDE-363s (using its duly adopted amended budgets) were accurate and valid, and why the Charter Schools' claims and positions did not comply with applicable law. Accepting that

10

it had the burden of proof and having met its burden, the School District maintains that the burden should have been on Charter Schools to establish the factual basis to support their legal challenge to the rates and for the School District to then present evidence in defense of those rates.

Initially, Section 1725-A of the CSL provides, in relevant part:

(5) Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year. A student enrolled in a charter school shall be included in the [ADM] of the student's [school] district of residence for the purpose of providing basic education funding payments and special education funding pursuant to Article XXV [of the CSL]. If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall deduct the estimated amount, as documented by the charter school, from any and all [s]tate payments made to the [school] district after receipt of documentation from the charter school. **No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the** [ADM] **for the students enrolled in the charter school from the school district for the previous school year**. If a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the [school] district after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

(6) Within thirty (30) days after the [S]ecretary makes the deduction described in clause (5), a school district may notify the [S]ecretary that the deduction made from [s]tate payments to the [school] district under this subsection is inaccurate. **The [S]ecretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student**[,] **and**

11

> **whether the amounts deducted from the school district were accurate**.

24 P.S. § 17-1725-A(a) (emphasis added). Clearly, a school district has the burden of proof.

Here, the fact that the withholdings were not made because Charter Schools did not timely submit final documentation of the payments to be made does not change which party has the burden of proof. Because it was still a reconciliation, and the School District is responsible for determining the fund amounts, the School District had the burden of proving that Charter Schools' claims were invalid and improper. Accordingly, the Secretary did not ignore the burden of proof placed on the School District.

Charter Schools next argue that the Secretary abused his discretion by failing to determine the School District's ADM. Charter Schools assert that the parties offered three different ADM numbers for the School District for each school year: (1) the ADM the School District used in its initial PDE-363s; (2) the ADM the School District used in its revised PDE-363 forms created for this litigation; and (3) the ADM the Department reported on its website after the hearings herein. Charter Schools contend that the Department abused its discretion by failing to clearly specify which ADM applied. The School District rejoins that the parties had stipulated that the ADM figures for the 2014-2015 and 2015-2016 school years published on the Department's website as of January 18, 2021, accurately reflect the Department's ADM data for those school years. The School District maintains that the Secretary acknowledged that stipulated fact, *see* Secretary's Op. at 1 n.3,[13] and stated that he would not consider which ADM data to use because of that stipulation.

---

[13] The School District indicated footnote 2; however, that was clearly a typographical error.

12

The parties' stipulation (Joint Stipulation) provided, in relevant part:

1. The parties agree that the [ADM] figures in [Charter Schools'] Exhibit [(]R-[)]136 for the School District accurately reflect the ADM data that appears in the Excel spreadsheets published on the [Department's] website as of January 18, 2021[,] for the 2014-2015 and 2015-2016 school years, and that R-136 may be admitted into the record. **By entering into this [Joint S]tipulation, the School District is not admitting or agreeing that the ADM published in R-136 is the correct ADM to be used for the PDE-363 calculations for the years in question, and it is not waiving any arguments about those documents by virtue of [this Joint S]tipulation[] other than the specific stipulated point that the ADM figures in R-136 accurately reflect the ADM data for the specified school years that appear on [the Department's] website as of January 18, 2021**.

2. The parties dispute which is the proper expenditure data to be used to calculate the rates using the PDE-363 form, under applicable law. Each party has put forward evidence supporting its respective position and the parties agree that the matter may be a legal issue. The School District has reviewed the documents identified as R-169, [R-]170, [R-]171 and [R-]172. The expenditures and deductions reflected in these documents are the same expenditures and deductions as those reflected in R-59 and R-82[.] . . . **The School District disputes that** these expenditures and deductions are the proper or only figures to use in the calculations under applicable law, or that **the ADM used in these particular exhibits is the proper ADM to use**. However, the parties agree that R-169, [R-]170, [R-]171 and [R-]172 may be admitted into the record, with all parties being free to make any arguments they choose about those documents and no party being treated as waiving any arguments about those documents by virtue of [this Joint S]tipulation[].

Reproduced Record (R.R.) Vol. 1 at 2088a (emphasis added).

13

In his [o]pinion, the Secretary stated:

> The [School] District and Charter Schools have agreed that the [ADM] figures in [] R-136 accurately reflect[] the ADM data, which appeared on [the Department's] website as of January 18, 2021. *See* Joint Stipulation, 1; *see also*, Charter Schools' [] R-136. Accordingly, the Secretary will not consider what ADM data was the proper data to use when calculating the [School] District's 2015-2016 and 2016-2017 charter school tuition rates.

Secretary's Op. at 1 n.3. In Conclusion of Law No. 8, the Secretary declared: "Annually, [the Department] calculates [the] [S]chool [D]istrict['s] [ADM], including a specific figure titled 'ADM for PDE-363.' All ADM data is annually posted to [the Department's] publicly available website." *Id*. at 10. **The Secretary directed** "**that the parties are to use the** rates, as calculated using the amended budgets, and **ADM**, **as reported by the** [**Department**], to reconcile the school years in question." Secretary's Nov. 21, 2022 Order (emphasis added). Notwithstanding footnote 3 in the Secretary's opinion, there is no doubt that the Secretary specified that the parties shall use the ADM reported on the Department's website. Accordingly, the Secretary did not abuse his discretion by failing to determine the School District's ADM.

Charter Schools next contend that the Secretary erred by allowing the School District to use what were purported to be the amended budgets adopted as late as one day before the end of the school year to determine the amount the School District was to pay Charter Schools for each resident student enrolled in the Charter Schools. Charter Schools assert that the 2014-2015 amended budget upon which the School District based its calculation for the 2015-2016 SY was adopted on June 30, 2015, the last day of the 2014-2015 SY. Charter Schools maintain that, according to the School District's witness, the School District's Home Rule Charter (Home Rule Charter) requires amended budgets to be adopted by the end of May of each

14

school year. Charter Schools claim that the School District conceded that it adopted the amended budget on the last day of the 2014-2015 SY. Charter Schools argue that the School District adopted the amended budget for the 2015-2016 SY on May 26, 2016, just over a month before the end of the school year. Charter Schools declare, therefore, for the 2015-2016 SY, at least 11 out of 12 months (roughly 91%) would have been based on actual spending.

The School District rejoins that the School Code permits school districts to reopen or amend their budgets for various reasons and to make fund transfers during a school year. *See, e.g.*, Sections 609, 615, 616, 616.1 and 687(c)-(d) of the School Code, 24 P.S. §§ 6-609, 6-615, 6-616, 6-616.1,[14] and 6-687(c) and (d). The School District retorts that those provisions reflect the General Assembly's explicit statutory authority for budget amendments. The School District maintains that, as a school district of the first class, it is not subject to the budget adoption and publication requirements found in Section 687(a) and (b) of the School Code, 24 P.S. § 6-687(a)-(b), a fact the Secretary noted. *See* Secretary's Op. at 13 n.6. The School District declares that it is, however, subject to the Home Rule Charter, which authorizes it to adopt a budget and amendments thereto. *See* Section 12-303 of the Home Rule Charter, R.R. at 4608a. The School District claims that the School Reform Commission adopted initial budgets for the 2014-2015 and 2015-2016 school years and adopted amended budgets during each of those fiscal years.

Section 1725-A(a)(2) of the CSL provides: "[The charter school shall receive for each student enrolled no less than **the budgeted total expenditure** per [the ADM] of the prior school year, . . . minus the budgeted expenditures of the [school] district of residence . . . ." 24 P.S. § 17-1725-A(a)(2) (emphasis added). Section 687 of the School Code mandates:

---

[14] Added by Section 2 of the Act of July 9, 2013, P.L. 408.

15

Annual budget; additional or increased appropriations; transfer of funds

(a)(1) The board of school directors of each school district of the second, third, or fourth class shall, annually, at least thirty (30) days prior to the adoption of the annual budget, prepare a proposed budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year.

. . . .

(h) Beginning with the adjusted final fiscal year 1991-1992 budget, and each fiscal year thereafter, **on or before September 15**, **each school district shall furnish to the Department** . . . **an electronic copy of the school district's final adopted annual budget** to include the amount of [school] district revenues being held in excess of its total budgeted expenditures.

24 P.S. § 6-687 (emphasis added).

Section 12-303 of the Home Rule Charter states, in relevant part:

Annual Operating Budget and Annual Revenue Estimate.

(a) The Board of Education [(Board)] shall, at least thirty (30) days before the end of the fiscal year, adopt by majority vote of all its members an operating budget setting forth in lump sum amounts the proposed expenditures of the Board during the next fiscal year as to each principal administrative unit of the [School] District, according to such classes of expenditures as the Board may determine, and the estimated receipts of the Board during the next fiscal year, including approximate estimates of proposed revenues and all other receipts. The total amount of proposed expenditures shall not exceed the amount of funds available for School District purposes.

(b) At least sixty (60) days prior to adoption of the annual operating budget, the Board shall adopt and submit to the Mayor and Council a lump sum statement of anticipated receipts and expenditures for the next fiscal year . . . .

(c) **The Board shall**, **at least thirty (30) days prior to the time any budget or amendment thereto** is adopted, conduct at least one public hearing thereon. . . .

R.R. at 4608a (emphasis added). As the CSL only requires use of "the budgeted total expenditure[,]" without specifying initial or amended, and because the General Assembly is presumed to be aware that school districts can amend their budgets, school districts' use of amended budgets does not violate the CSL. 24 P.S. § 17-1725-A. Accordingly, the Secretary did not err by allowing the School District to use the amended budgets to determine the amount it was to pay for each resident student enrolled in Charter Schools.

Charter Schools next argue that the Secretary erred by allowing state-funded Pre-K expenditures to be deducted from the total budgeted expenditures. Charter Schools assert that the School District and the Department included this deduction because they felt that the General Assembly's funding formula was not fair and should have included a deduction for state-funded Pre-K expenditures. Charter Schools specifically declare that the Department concluded that Pre-K expenditures should not be included in the calculation because charter schools were not eligible for Pre-K funding. Charter Schools contend that this is the exact opposite reasoning it used to conclude that deductions should be allowed for federal expenditures, where the Department reasoned that expenditures resulting from federal grants can be deducted because charter schools are eligible for federal grants. Charter Schools assert that this type of rewriting of the CSL based on notions of fairness is not allowed by *Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304 (Pa. 2017), and the Department's willingness to approve of this rewriting, even when no federal funds or *double-dip* are present, demonstrates that these arguments with respect to the other non-statutory deductions are nothing more than a diversion to hide the Department's willingness to modify the statute to meet its idea of what should have been in the statute.

17

The School District rejoins that, under the CSL, Pennsylvania charter schools are not authorized to operate any student programs earlier than kindergarten, and the Secretary so found. The School District retorts that charter schools do not (and cannot) serve children who are ages three and four in Pre-K programs. The School District further asserts that none of Charter Schools in this case presented any evidence that they operate Pre-K programs. The School District maintains that the state and federal funding statutes in Article XXV of the School Code that govern Pre-K funding exclude Pre-K enrollment from ADM calculations for purposes of calculating state funding. The School District argues that, as the Secretary found, charter schools are not authorized under the CSL or other law to provide Pre-K programs or serve three- and four-year-olds enrolled in Pre-K programs. The School District further contends that a school district is not obligated to provide funding to a charter school for grade levels or ages that the charter school does not and cannot offer under the law. The School District cites *Slippery Rock Area School District v. Pennsylvania Cyber Charter School*, 31 A.3d 657 (Pa. 2011), wherein the Pennsylvania Supreme Court held that school districts are not obligated to fund kindergarten programs offered by a charter school for a four-year-old student when the school district had exercised its discretion not to offer kindergarten programs for four-year-old students in its own schools, even though the CSL was silent on this issue.[15] Similarly, the School District proclaims that school districts would not have to include expenditures in the rate calculation formula associated with Pre-K programs that charter schools cannot operate and for which they cannot receive payment from school districts.

_____

[15] The *Slippery Rock* Court held that when faced with a conflict regarding funding, "the cyber charter school is bound by the policy of the school district in which the student resides." *Id*. at 666. *Slippery Rock* is therefore distinguishable because the school district therein did not provide kindergarten programs.

18

Section 1511-D of the School Code provides the following definitions:

**"Approved provider."** An eligible provider that has been approved by the Department . . . to offer [Pre-K] under this subarticle.

. . . .

**"Eligible provider."** Any of the following entities if the entity complies with all quality program standards established by the Department . . . :

(1) A school district.

(2) A Head Start program.

(3) A nursery school . . . .

(4) One of the following:

(i) Prior to July 1, 2009, a child day care center or a group day care home . . . established by the Department of [Human Services].

(ii) After June 30, 2009, a child day care center or a group day care home . . . established by the Department of [Human Services]. . . .

**"Eligible student."** A child who is at least three years of age and is younger than the entry age of kindergarten in the school district of residence.

**"Program."** The Pre-K Counts Program [(Pre-K Counts)] established under [S]ection 1512-D [of the School Code].

24 P.S. § 15-1511-D.[16] Section 1512-D of the School Code mandates: "To the extent that funds are appropriated by the General Assembly, the [D]epartment shall establish the Pennsylvania Pre-K Counts [] as a competitive grant program to expand

---

[16] Section 1511-D of the School Code was added by Section 13 of the Act of July 20, 2007, P.L. 278.

[Pre-K] opportunities **for eligible students**." 24 P.S. § 15-1512-D[17] (emphasis added). Since Charter Schools are not approved providers, they are not entitled to Pre-K Counts funding. Moreover, students funded by state Pre-K Counts funds are not included in the ADM for the purpose of funding allocations. *See* Section 1515-D(b) of the School Code, 24 P.S. § 15-1515-D(b).[18] If Pre-K Counts funded students are not included in the ADM, then Pre-K Counts expenditures should not be included in the charter school tuition rate calculations. Accordingly, the Secretary did not err by allowing state-funded Pre-K expenditures to be deducted.

For all of the above reasons, the Secretary's November 21, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge

---

[17] Section 1512-D of the School Code was added by Section 13 of the Act of July 20, 2007, P.L. 278.

[18] Section 1515-D of the School Code was added by Section 13 of the Act of July 20, 2007, P.L. 278.

20

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Esperanza Academy Charter School, Petitioner | : | CASES CONSOLIDATED |
| | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia (Department of Education), Respondent | : | Nos. 1430-1431 C.D. 2022 |
| | : | |
| Esperanza Cyber Charter School, Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia (Department of Education), Respondent | : | Nos. 1432-1433 C.D. 2022 |

# O R D E R

AND NOW, this 25th day of November, 2024, the Commonwealth of Pennsylvania, Department of Education's Acting Secretary of Education Eric Hagarty's November 21, 2022 order is affirmed.

_____

ANNE E. COVEY, Judge